SENSORMATIC SECURITY CORP.

v.

SENSORMATIC ELECTRONICS CORP. and ADT Security Services, Inc.

No. CIV.A. DKC2004–0174.

United States District Court, D. Maryland.

Aug. 10, 2004.

---

**17.** Objections at 7 (quoting *Ponnapula,* 373   F.3d at 494).

David J. Butler, Martin Louis Zerwitz, Tacie Hashida Yoon, Swidler, Berlin, Shereff, Friedman, LLP, Washington, DC, for Plaintiff.

Beth A. Levene, Bruce Roger Genderson, Williams and Connolly LLP, Terence J. Lynam, Michael Lee Converse, Tobias Eli Zimmerman, Akin, Gump, Strauss, Hauer and Feld, LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution is the motion of Defendants Sensormatic Electronics Corporation (Sensormatic) and ADT Security Services, Inc. (ADT) to dismiss the amended complaint of Sensormatic Security Corporation (SSC).[1] The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion will be denied in part and granted in part.

## I. Introduction

This is the second breach of contract action Plaintiff has brought against the same defendants. The original action, hereinafter *Sensormatic I,* is still pending before this court. *See Sensormatic Security Corp. v. Sensormatic Electronic Corp.,* DKC 02–cv–1565. In that action, SSC alleges, *inter alia,* that Sensormatic breached its Franchise Agreement with SSC, and that ADT tortiously interfered with that contract.[2] Also in that action, SSC moved for leave to file a third amended complaint to add an additional breach of contract claim against Sensormatic based upon an alleged breach of paragraph 21 of the Franchise Agreement between SSC and

---

**1.** An earlier motion to dismiss the original complaint, paper no. 15, is denied as moot.

**2.** The Franchise Agreement grants SSC the exclusive rights to lease, sell, distribute, service, repair and maintain Sensormatic security and anti-theft equipment. Section 9(c) of the Franchise Agreement prohibits Sensormatic from competing with SSC in SSC's exclusive franchise territory or from granting "to any third party a franchise or any other right to sell, lease or service Equipment in SSC's territory." Paper no. 107, ex. 3, ¶ 12. "Equipment" is defined as including "all Detection Devices, Tags, Accessories and Supples." *Id.* at ¶ 13(a).

Sensormatic. Paragraph 21 requires that, if Sensormatic enters into any contract with a similarly situated franchisee containing more favorable terms or conditions, the Franchise Agreement must be amended to include the more favorable terms. According to SSC, Sensormatic breached paragraph 21 by not notifying SSC of, or modifying SSC's agreement to include, the terms and conditions contained in an amendment to another franchise agreement entered into between Sensormatic and a former Sensormatic franchisee on or about November 30, 1978. SSC contends that the amendment, "the Winner Addendum," provides more favorable terms or conditions to the former franchisee by expanding the definition of the term "Detection Devices" in the SSC–Sensormatic Franchise Agreement to include a broader range of products, including access control products, which are not encompassed by the SSC–Sensormatic Franchise Agreement. *See* paper no. 25, at 3. Based on these allegedly more favorable terms, Sensormatic breached the Franchise Agreement when it failed to notify SSC of the addendum and refused to incorporate the more favorable terms into the SSC–Sensormatic Franchise Agreement.

Although SSC learned of the Winner Addendum on May 9, 2003, it did not seek leave to amend its complaint in *Sensormatic I* until August 28, 2003—nearly two and one half months after the June 3, 2003 deadline set forth in the scheduling order for amendments of the pleadings. On January 20, 2004, the court denied SSC's motion for leave to amend the complaint on the basis that SSC's lack of diligence in failing timely to amend its complaint was without good cause. The following day, SSC filed this separate action, hereinafter *Sensormatic II,* asserting, almost verbatim, the same claim that the court prohibited SSC from asserting, by amendment of its complaint, in *Sensormatic I.*

Thereafter, Sensormatic moved to dismiss the one-count complaint, arguing that SSC's claim was barred under the doctrine against claim splitting and was an improper attempt to circumvent the court's denial of its motion for leave to amend. Sensormatic also asserted that the one count complaint failed to state a claim upon which relief could be granted. SSC filed an opposition on March 22, 2004, to which SSC filed a reply. On May 10, 2004, while Sensormatic's motion to dismiss was pending, SSC filed an amended complaint, which asserts the same allegations concerning the Winner Addendum, but adds ADT as a party and three additional claims: count two alleges that Sensormatic committed an additional breach of the Franchise Agreement when it refused to allow SSC to sell Sensormatic's Radio Frequency Identification (RFID) products; count three alleges that SSC committed a breach of the contract and of good faith and fair dealing by authorizing ADT to sell and service Sensormatic access control and RFID products within SSC's exclusive franchise territory; and count four asserts a tortious interference claim against ADT directly for selling, and ordering SSC to refrain from selling, RFID products.

Defendants now move to dismiss SSC's amended complaint on the following grounds: (1) that the complaint constitutes impermissible claim-splitting; (2) SSC's breach of contract claim represents an improper attempt to evade the court's prior decision denying SSC the right to amend its claims in *Sensormatic I;* and (3) that, as asserted in its motion to dismiss the original complaint, count one of the complaint fails to state a claim for breach of contract under Fed.R.Civ.P. 12(b)(6). SSC responds by arguing that the claims asserted in the amended complaint rely on significantly different facts then the claims in *Sensormatic I* and, therefore, it is not

barred from bringing a separate suit against Sensormatic for breach of the same Franchise Agreement. Specifically, Plaintiff argues that the claims in *Sensormatic II* require new evidence regarding the execution and concealment of the Winner Addendum, Sensormatic's development and marketing of access control products, and the recent development and marketing (through ADT) of RFID products. *See* paper no. 25, at 8.

## II. Standard of Review

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. v. Air–A–Plane Corp.,* 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

## III. Analysis

### A. Claims Concerning the Winner Addendum and Access Control Products

Two of the newly asserted claims in *Sensormatic II* involve products not previously at issue in *Sensormatic I* or encompassed by the terms of the Franchise Agreement. Count one alleges breach of contract based on the existence of the Winner Addendum and is the same claim that SSC was denied leave to amend in *Sensormatic I*. In count three, SSC alleges, in part, that Sensormatic breached the Franchise Agreement when it authorized ADT to sell access control products in SSC's exclusive territory.[3] Count one and this portion of count three arise as a result of the Winner Addendum, its expansion of Detection Devices to include access control products, and Sensormatic's refusal to notify SSC of the addendum and to incorporate access control products into the SSC–Sensormatic Franchise Agreement and definition of Detection Devices. Based on SSC's unsuccessful attempt to include the

---

**3.** In count three, SSC also alleges breach based on Sensormatic's authorization of ADT to sell RFID products in SSC's exclusive territory. These allegations rest on a separate set of facts and are addressed *infra*.

Winner Addendum claims in *Sensormatic I*, Sensormatic now argues that these claims should be dismissed under the doctrine of claim splitting and because SSC knew of the alleged conduct but failed to amend the *Sensormatic I* complaint to incorporate these claims before the amendment deadline passed.

### 1. The Doctrine of Claim Splitting

■■■ It is undisputed that it is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("As between federal district courts, ... the general principle is to avoid duplicative litigation."). This rule against duplicative litigation, also referred to as "claim splitting," is the " 'other action pending' facet of the res judicata doctrine.' " *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir.1998).[4] Like res judicata, claim splitting "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Myers v. Colgate–Palmolive Co.*, 102 F.Supp.2d 1208, 1224 (D.Kan.2000) (internal citations omitted). Thus, when a suit is pending in federal court, a plaintiff has no right to assert another action "on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000).

■■■ In a claim splitting case, as with the traditional res judicata analysis, the second suit will be barred if the claim involves the same parties or their privies and "arises out of the same transaction or series of transactions" as the first claim. *See Trustmark Insur. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269–70 (11th Cir.2002). The court must "assess whether the second suit raises issues that should have been brought in the first." *Curtis*, 226 F.3d at 140.

Very often, the doctrine of claim splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those claims. *See Northern Assurance Co. of Am. v. Square D. Co.*, 201 F.3d 84, 87–88 (2d Cir.2000) (citing string of cases dismissing claim in second suit that was duplicative of claim sought to be amended to first suit); *In re Kevco, Inc.*, 309 B.R. 458, 465–66 (Bkrtcy.N.D.Tex. 2004) (same). The preclusion of a claim not only prohibits a plaintiff from filing duplicative suits and from circumventing an earlier ruling of the court, it is in keeping with "the rule that a plaintiff must bring suit against the same defendant on all claims that relate to the same conduct, transaction or event at the same time." *Curtis*, 226 F.3d at 139.

### 2. Winner Addendum

■■■ The allegations and claims in count one concerning the Winner Addendum are the same allegations and claims that SSC was denied leave to amend in *Sensormatic*

---

**4.** The rule against claim splitting is based on the same principles as res judicata. Res judicata applies, however, when a second suit is filed after a final adjudication of a first suit and claim splitting applies when, like here, two suits are pending at the same time. Regardless of the differences in form, both doctrines intend to "foster[ ] judicial economy and protect[ ] the parties from vexatious and expensive legation." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir.2001). In order to meet these objectives, courts faced with duplicative suits may stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. *See Curtis*, 226 F.3d at 139 (citing cases in which courts took various actions).

*I.* As the court noted in that earlier case, the Winner Addendum claims could have been, and in fact were, raised in *Sensormatic I.* Although now arguing that the Winner Addendum arises out of different operative facts, in seeking the amendment, SCC conceded that policy objectives encourage the "resolution in one action of disputes between the same parties that arise out of the same transaction." *See* paper no. 21, ex. C., at 8 (citing *Chen v. Mayflower Transit, Inc.,* 159 F.Supp.2d 1103, 1107 (N.D.Ill.2001)). SSC further argued that amendment was permissible "because the new breach of contract claim is based upon the same Restated Franchise Agreement that is currently at issue." *See id.* at 2.

Regardless of the specific provision that SSC alleges was breached, the factual predicate of SSC's Winner Addendum breach claim, in both *Sensormatic I* and *Sensormatic II,* is the Franchise Agreement between Sensormatic and SSC. Both lawsuits involve breaches of the same contract, committed by the same party and question the extent of the parties' agreed upon obligations. The factual issues to be resolved in both actions are not concerning the validity or scope of the Winner Addendum, but Sensormatic's obligations to SSC under the Franchise Agreement. Thus, SSC's Winner Addendum claims arise out of the same transaction and operative facts underlying the claims in *Sensormatic I* and could have been heard by the court in the earlier case had the motion to amend been timely. *See Trustmark,* 299 F.3d at 1270 ("[W]here the second lawsuit alleges a breach of the same contract that was breached in the first, by the same party, in the same general manner those actions constitute the factual predicate, and any claims relating to that contract should be brought in the same lawsuit.").

That the court denied SSC's request, due to its dilatoriness and the harm that would result to Defendants, does not authorize SSC to pursue those denied claims by bringing a second action. *See Sendi v. NCR Comten, Inc.* 624 F.Supp. 1205, 1207 (E.D.Pa.1986) ("[T]he district count 'must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to amendment of complaints.'") (quoting *Walton v. Eaton Corp.,* 563 F.2d 66, 71 (3d Cir.1977)). Granting Plaintiff leave to pursue its "Winner Addendum" claims in the new action "would frustrate the policies underlying the res judicata doctrine, put the parties to the cost and vexation of multiple lawsuits, deplete judicial resources, foster inconsistent decision, and diminish reliance on judicial decisions." *Myers,* 102 F.Supp.2d at 1224. Accordingly, count one of SSC's second amended complaint is barred by the rule against claim splitting and, therefore, will be dismissed.

### 3. Authorization of ADT to Sell Access Control Products

As SSC concedes, the "Detection Devices" covered by the Franchise Agreement and at issue in the first action do not include access control products. *See* paper no. 25, at 3. In its untimely third amended complaint, it was through the Winner Addendum that SSC sought to expand the definition of products encompassed by the Franchise Agreement. In doing so, SSC alleged that Sensormatic was ordered by SSC to "cease authorizing any third parties to sell, lease, install, repair or maintain access control or access management products." *See* DKC 02–cv–1565, paper no. 107, ex. 3, ¶ 88 (*Sensormatic I,* third amended complaint). SSC also sought damages for "all sales of access control and access management products and all service revenue derived from the installa-

tion, repair or maintenance of access control or access management products in SSC's exclusive franchise territory since November 30, 1978." *See id.* at 25 (prayer for relief, ¶ B). The same allegations and demand for relief are found in *Sensormatic II. See* paper no. 18, ¶¶ 55 & 56; *id.* at 20, ¶ A. Once again, SSC attempts to circumvent the rule of this court by re-asserting prior claims that could have been heard in *Sensormatic I* had SSC timely filed its motion to amend.

Access control products are not encompassed by the Franchise Agreement either originally or by virtue of the Winner Addendum. Rather, it is only through the Winner Addendum that SSC may claim any rights related to access control products. Because SSC is barred from asserting its Winner Addendum claims, there exists no basis for a breach of contract claim based on the authorization of ADT to sell access control products in SSC's exclusive territory. Furthermore, as SSC concedes, Sensormatic had authorized ADT, as a third party, to sell access control products as far back as 2001—well before SSC filed its original complaint on April 30, 2002. *See* paper no. 18, ¶ 52 (alleging, in relevant part, that "[s]ince at least November 2001, ADT has been authorized to sell and service, and has been selling and servicing, Sensormatic access control products and systems in SSC's exclusive franchise territory."). Therefore, based on all the reasons stated, SSC is now barred from asserting the Winner Addendum and access control claims in count I and III.

### B. Claims Concerning Sensormatic RFID Products

In *Sensormatic I*, SSC's breach of contract claims arise out of Sensormatic's contractual obligations regarding specific "Detection Devices": Electronic Article Surveillance (EAS) labels and closed circuit television (CCTV) products. In *Sensormatic II*, SSC alleges that Sensormatic continued to breach the agreement's provisions regarding Detection Devices, but this time SSC focuses on Sensormatic's RFID products. In a portion of count three of the *Sensormatic II* amended complaint, SSC alleges breach of contract and the implied covenant of good faith and fair dealing based on Sensormatic's authorization of ADT to sell RFID products in SSC's exclusive franchise territory. Count two alleges a breach of contract and implied covenant of good faith and fair dealing based on Sensormatic's refusal to allow SSC to sell RFID Products in SSC's exclusive territory.

Both counts are based on the same Franchise Agreement and contractual obligations at issue in *Sensormatic I* and, if brought in a timely manner, arguably could have been heard in the earlier action as they arise out of the same transaction and operative facts. However, although the RFID claims allegedly fall within the definition of Detection Devices at issue in the earlier action, for practical reasons, the court must draw a line in time after which Plaintiff is permitted to assert later-occurring claims based on later-occurring breaches of the same contract.

While not decided in this circuit, other circuits have looked at the issue of claim splitting and timing of claims. In *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir.2000), the Second Circuit was confronted with a plaintiff who, like SSC, was denied by the district court leave to file a second amended complaint based on procedural grounds of untimeliness. Soon thereafter, the plaintiff tried to re-litigate the same claim, along with additional related claims, in a separate suit before the same court. The district court dismissed the second suit as duplicative and, on appeal, the Second Circuit affirmed in part and reversed in part.

The court held that the plaintiff was barred from relitigating in a subsequent suit all claims that could have been asserted in a previous, and still pending, suit. The "could have been asserted" claims were all claims that arose prior to the first amended complaint. *See id.* at 139. The plaintiff, however, was not under an obligation to bring any claims arising *after* the filing of the first amended complaint in the earlier action. *See id.* ("The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims.").

The court's holding is based on, and well supported by, the principles of res judicata: it protects parties from the concurrent litigation over the same subject matter and ensures that plaintiffs are barred from filing claims which were raised or could have been raised in an earlier proceeding. *See Trustmark,* 299 F.3d at 1271–72. Following this reasoning, the operative date in this case is the date the second amended complaint was filed in *Sensormatic I:* August 8, 2002. As even Sensormatic concedes, unlike the access control products, ADT's authorization to sell RFID products did not occur, and was not known of, until March, 2003, when ADT issued a press release announcing ADT as an authorized distributor of RFID products. *See* paper no. 18, ¶¶ 35, 39, 40. While this conduct supports the claim for another breach of the Franchise Agreement prohibitions regarding Detection Devices, it was a later-occurring breach that arose after the second amended complaint was filed in *Sensormatic I.*

 The same is true of count two where SSC alleges breach based on Sensormatic's refusal to allow SSC to sell RFID products in its franchise territory. Sensormatic moves to dismiss, arguing

that, because SSC knew or should have known in March, 2003 that ADT was an official distributor of RFID products, all RFID claims are restricted to the earlier action. This argument, however, overlooks the fact that Sensormatic's denial of SSC's right to sell RFID products did not occur until March, 2004. While claim splitting and the principles of res judicata prohibit a Plaintiff from prosecuting its case piecemeal, *see Haytian Republic,* 154 U.S. 118, 14 S.Ct. 992, 38 L.Ed. 930 (1894), a party is not barred from bringing in a subsequent action those claims that could not have been included in the original suit—even if they are related, or arise out of, the previously filed claim. *See Lawlor v. Nat'l Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122, (1955).

Although ADT was authorized as a distributer in 2003, it was not until a February 11, 2004 letter from ADT that SSC learned of Sensormatic's position that the Franchise Agreement did not include selling or marketing rights to RFID products. *See* paper no. 18, ¶ 44. It was also in this letter that SSC was instructed by ADT not to engage in any marketing of RFID products and to refer any sales leads or inquiries to ADT. *See id.* In response, on March 5, 2004, SSC wrote a letter to Sensormatic, protesting ADT's instructions and contesting Sensormatic's interpretation of the Franchise Agreement. *Id.* at ¶ 45. By letter dated March 25, 2004, Sensormatic affirmatively refused to acknowledge that SSC had any contractual rights regarding RFID products. *Id.* at ¶ 46. Thus, Sensormatic's refusal to permit SSC to sell RFID products occurred long after the filing of the second amended complaint in *Sensormatic I* on August 8, 2002. As stated, Plaintiff is not prohibited from asserting a subsequent suit for any breach that could not have been brought in an earlier action. *See Meekins v. United*

*Transportation Union,* 946 F.2d 1054, 1057 (4th Cir.1991). Accordingly, Sensormatic's motion to dismiss will be denied as to count two and the portion of count three related to the authorization of ADT to sell RFID products.

### C. *Tortious Interference Against ADT (count four)*

■ In count four of the amended complaint, SSC asserts a claim of tortious interference against ADT for selling and servicing RFID products, systems and trademarks within SSC's territory. According to SSC, ADT interfered with the Franchise Agreement when it instructed SSC that SSC was prohibited from marketing RFID products and directed SSC to refer all sales leads for RFID products and systems to ADT.[5] As stated previously, this instruction was made by a letter dated February 11, 2004. *See* paper no. 18, ¶ 44. Because count four is based on ADT's demand that SSC refrain from selling, which did not occur until February, 2004, SSC was not required to bring this claim in *Sensormatic I,* nor could it have been asserted in that suit. Therefore, Sensormatic's motion to dismiss count four of SSC's amended complaint will be denied.

### IV. Conclusion

Based on the foregoing reasoning, Defendants' motion to dismiss will be granted as to counts one and the portion of three dealing with access control devices, but denied as to counts two, four, and the remainder of count three dealing with RFID products. A separate order will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 10th day of August, 2004, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion of Defendant Sensormatic Electronics Corp. to dismiss the original complaint (paper no. 15) BE, and the same hereby IS, DENIED as moot;

2. The motion of Defendants Sensormatic Electronics Corp. and ADT Security Services Inc. to dismiss Plaintiff's amended complaint (paper no. 21) BE, and the same hereby IS, GRANTED as to counts one and the portion of count three dealing with access control devices, and DENIED as to counts two, four, and the portion of count three dealing with RFID products; and

3. The clerk is directed to transmit copies of the Memorandum Opinion and this Order to counsel for the parties.

---

5. The majority of the allegations in count four are worded identically to the claims asserts in count seven of the second amended complaint in *Sensormatic I*—that is, they allege that ADT's interference caused Sensormatic to breach the Franchise Agreement's provisions regarding Sensormatic Equipment and trademarks. In only two discrete places, does SSC refer to RFID specifically. Although, at first glance, count four appears to be stating an identical claim as that stated in *Sensormatic I,* the court will assume, based the reference to RFID and the interrelation between counts two and four of the amended complaint, that SSC intended this count to be related to ADT's conduct regarding RFID products specifically.