**HARDWIRE LLC, Plaintiff,**

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Defendant.**

**No. CIV. RDB 04–2524.**

United States District Court, D. Maryland, Northern Division.

March 18, 2005.

Charles O. Monk, II, Edward Joseph Baines, Dan Friedman, Saul Ewing LLP, Baltimore, MD, William Carr Hudson, Law Office of William Carr Hudson, Pocomoke City, MD, for Plaintiff.

Howard A. Wolf Rodda, Kenneth Bernard Weckstein, Sr., Epstein Becker and Green PC, Washington, DC, for Defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

Pending before the Court is a Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by The Goodyear Tire & Rubber Company ("Goodyear" or "Defendant"). The initial Complaint filed by Hardwire LLC ("Hardwire" or "Plaintiff") in the Circuit Court for Worcester County, Maryland, alleged anticipatory breach of contract, requested a declaratory judgment regarding the contract, and specific performance on the contract. Goodyear removed this case based on diversity of citizenship to this Court and, on August 4, 2004, moved to dismiss the case. Hardwire did not respond to the August 4, 2004 Motion to Dismiss, and instead, filed a First Amended Complaint. In addition to the Counts alleged in the initial Complaint, the First Amended Complaint alleges (1) breach of contract, (2) fraud, (3) negligent misrepresentation, and (4) tortious interference with economic advantage.

This Court denied Goodyear's initial Motion to Dismiss the initial Complaint without prejudice. Goodyear now moves to dismiss all Counts of Hardwire's First Amended Complaint. Hardwire, with Goodyear's consent, moved the court for leave to file a Second Amended Complaint pursuant to Fed.R.Civ.P. 15(a) and Local Rule 103.6(b) (D.Md.2004). On October 7,

2004, this Court granted Hardwire's Motion for Leave to Amend and ordered that Goodyear's Motion to Dismiss and Hardwire's Opposition to the Motion to Dismiss, applied to the Second Amended Complaint. Additionally, this Court ordered that Goodyear had the right to file a reply memorandum in response to Hardwire's Opposition to the Motion to Dismiss. The Second Amended Complaint ("the Complaint") deleted paragraph 20 of the First Amended Complaint, which asserted that there was no integration clause in an agreement between the parties that is the subject of this litigation. There were no other changes to the Complaint setting forth the Plaintiff's cause of action.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441. The issues have been fully briefed by counsel for the parties and no hearing is necessary on this motion. *See* Local Rule 105.6 (D.Md.2004). For the reasons set forth below, Goodyear's Motion to Dismiss is STAYED as to Counts I–III and DENIED as to the remaining Counts IV–VII.

## BACKGROUND

Hardwire, formerly known as Tunis Works, is a small, closely held, Delaware limited liability corporation with its principal place of business in Pocomoke City, Maryland. Hardwire founder and current President, George Tunis, III, invented the Hardwire product, a light-weight reinforcing material with the strength of steel and the malleability of plastic. The two principal ingredients to the Hardwire product are a steel tire cord, and various resinous materials.

The Defendant, Goodyear, is an Ohio corporation engaged in the sale of tire and rubber products. Goodyear manufactures a steel tire cord such as that used in the Hardwire product. In or around early 2000, Goodyear began searching for opportunities in which it could market its tire cord. At the same time, Hardwire was searching for a consistent supply of tire cord to continue to develop the company.

Hardwire, then known as Tunis Works, negotiated an agreement with Goodyear for a supply of tire cord on or about May 13, 2002. The agreement consisted of a "Purchase Order Agreement" (the "Purchase Order") and a "Purchase Order, Exclusive Sales and Representation Agreement" (the "Agreement"). Section 1A of the Agreement appointed Hardwire as Goodyear's "exclusive, independent sales representative" for tire cord and products containing tire cord. Section 1A also obliged Hardwire to "aggressively promote the sale of Tire Cord manufactured by Goodyear," to "call upon customers ... [to] inform them ... of the potential applications for the product," and to "solicit and obtain short- and long-term contracts with customers to supply and sell the Products." Section 1B of the Agreement appointed Goodyear Hardwire's "exclusive supplier" of tire cord, thus obligating Hardwire to purchase all of its tire cord requirements from Goodyear. The price of the tire cord for the first year of the Agreement was set in an attached schedule. The Agreement specified that revised pricing may be negotiated not more than once annually to become effective on the next anniversary of the Agreement. Paragraph 4 of the Agreement provided that all Hardwire's orders shall be submitted to Goodyear for acceptance or rejection and that no order would be binding unless accepted by Goodyear in writing. In addition, paragraph 4 provided that upon Goodyear's rejection, Hardwire is free to fill the order through another supplier.

The Agreement set a term of twenty

years, set to expire on December 31, 2022.[1] The parties functioned well under the Agreement for approximately three years. However, on April 19, 2004, Hardwire received a letter from Goodyear in which Goodyear purported to immediately terminate its contract with Hardwire, because, according to Goodyear, Hardwire's alleged violations of Goodyear's trademarks were incurable breaches of their contract. The letter offered to renegotiate the Agreement under a different pricing and term scheme. In response to this letter, Hardwire filed its initial Complaint, seeking to enforce the parties' Agreement. In this initial Complaint, Hardwire sought (1) relief for anticipatory breach of contract, (2) a declaratory judgment regarding the contract and (3) specific performance on the contract. On August 4, 2004, Goodyear filed a motion to dismiss Hardwire's Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Hardwire filed a First Amended Complaint on August 23, 2004. The Court denied Goodyear's Motion to Dismiss Hardwire's initial Complaint without prejudice by letter of August 7, 2004.

Hardwire's First Amended Complaint sought (1) relief for fraud, (2) negligent misrepresentation, (3) tortious interference with economic advantage, (4) anticipatory breach of contract, (5) breach of contract, (6) a declaratory judgment regarding the contract, and (7) specific performance on the contract. Hardwire based its fraud and negligent misrepresentation claims on its assertion that during the contract negotiations, Goodyear Akron executives "represented to Tunis that Goodyear would continue to supply Hardwire with Tire Cord as long as it was available, for a period of not less than twenty years." Hardwire argues this false representation was made to induce Hardwire to enter into an exclusive supply agreement.

In the First Amended Complaint, Hardwire argued that the Agreement lacked an integration clause. On September 7, 2004, Goodyear filed a Motion to Dismiss Hardwire's First Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). In its Motion to Dismiss, Goodyear argued that the Agreement contained an integration clause. Hardwire then agreed that the Agreement contained the integration clause and requested Goodyear's consent to file a Second Amended Complaint.

As mentioned above, upon receipt of Goodyear's consent, Hardwire moved the Court for leave to file a Second Amended Complaint (hereinafter "the Complaint") pursuant to Fed.R.Civ.P. 15(a) and Local Rule 103.6(b). On October 7, 2004, this Court granted Hardwire's Motion for Leave to Amend and ordered that Goodyear's Motion to Dismiss and Hardwire's Opposition to the Motion to Dismiss, applied to the Second Amended Complaint. The Court further ordered that Goodyear had the right to file a reply memorandum in response to Hardwire's opposition to the Motion to Dismiss. The Second Amended Complaint deleted paragraph 20 of the First Amended Complaint, which asserted that there was no integration clause.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss should be granted only if, after accepting the plaintiff's well-pleaded allegations as true, it appears certain that the plaintiff can

---

1. Termination of the Agreement could occur earlier in the event of four specified situations. However, neither party alleges that any of these four specified situations are at issue in the present action.

prove no set of facts in support of his claim entitling him to relief. *Marketing Products Management, LLC v. Healthandbeautydirect.com, Inc.*, 333 F.Supp.2d 418, 420 (D.Md.2004); (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price–Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001).

In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir.1969). However, "the court need not accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979)." *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 329 F.Supp.2d 574, 578 (D.Md.2004).

■ In diversity actions, the choice of law rules of the state in which the district court sits determine the applicable substantive law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When deciding contract claims, Maryland courts apply the choice of law standard in the Restatement (Second) of Conflict of Laws § 187(2) (1971).

> The law of the state chosen by the parties to govern their contractual rights will be applied, ... unless either
> (a) the chosen state has no substantial relationship to the parties or transaction and there is no reasonable basis for the parties choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Padco Advisors, Inc. v. Omdahl,* 179 F.Supp.2d 600, 605 (D.Md.2002). The parties agree that, pursuant to the Agreement's choice of law selection, the Agreement "shall be governed by and construed in accordance with the laws of the State of Ohio." (Compl., Ex. B, ¶ 15; First Am. Compl., Ex. C and Mot. to Dismiss First Am. Compl., Fn. 10.) Accordingly, this Court applies Ohio law to address Counts IV–VII of the Complaint and to determine the validity and enforcement of this contract. *Padco Advisors, Inc.,* 179 F.Supp.2d at 605.

■ In addressing Counts I–III of the Complaint, this Court must follow Maryland's choice of law rules when determining which jurisdiction's substantive law to apply in tort actions. *Cremi v. Brown,* 955 F.Supp. 499, 522 (D.Md.1997), *aff'd,* 132 F.3d 1017 (4th Cir.1997). Maryland adheres to the *lex loci delicti* rule. *Id.; Philip Morris Inc. v. Angeletti,* 358 Md. 689, 744–50, 752 A.2d 200, 230–33 (2000); *Hauch v. Connor,* 295 Md. 120, 123–25, 453

A.2d 1207, 1209–10 (1983); *White v. King,* 244 Md. 348, 352, 223 A.2d 763, 765 (1966); *see also Farwell v. Un,* 902 F.2d 282, 286 (4th Cir.1990). Under this rule, "when an accident occurs in another state substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place." *White,* 244 Md. at 352, 223 A.2d at 765. Depending on how this rule is applied to the facts of this case, Ohio, North Carolina, or Maryland law may govern the tort claims. As the parties have recognized, Maryland courts have not addressed the issue of where the "wrong" occurs in cases of fraud, or negligent misrepresentation, when the alleged wrongful act and the alleged loss occur in separate jurisdictions. *Cremi,* 955 F.Supp. at 522; *Philip Morris, Inc.,* 358 Md. at 750 n. 28, 752 A.2d at 233 n. 28.

Hardwire claims that the "wrongful acts" or statements on which it bases its fraud and negligent misrepresentation claims were uttered by Goodyear representatives during contract negotiations both over the phone and in person at its Asheboro, North Carolina plant and at Goodyear's corporate headquarters in Akron, Ohio. (Opp. to Mot. to Dismiss at 14.) Additionally, Hardwire claims Goodyear concealed or omitted material information related to contract negotiations at Goodyear's Akron, Ohio headquarters. *Id.* In regard to its tortious interference with economic advantage claim, Hardwire alleges Goodyear prevented other supplier(s) from contracting with Hardwire in either North Carolina or Ohio. *Id.* Finally, Hardwire claims it suffered its losses in Pocomoke City, Maryland, where Hardwire has its principal place of business. *Id.*

Thus, based on the facts as alleged in the Complaint, it is unclear, under Maryland law, which jurisdiction's substantive law should be applied to the tort claims in this case, as set forth in Counts I–III. Accordingly, these questions shall be certified to the Court of Appeals of Maryland.

### DISCUSSION

Goodyear claims that Hardwire's Complaint should be dismissed in its entirety because there is no valid, enforceable agreement between the parties, and, therefore, Hardwire has no cause of action for anticipatory breach of contract (Count IV), breach of contract (Count V), declaratory judgment (Count VI), or for specific performance (Count VII). (Mot. to Dismiss at 2.) Hardwire alleges that the "Purchase Order" and the "Agreement" support its claim. Goodyear also alleges that the three tort actions set forth in Counts I–III, which allegedly flow from Hardwire's contractual claims, must also be dismissed. Specifically, Goodyear argues that Hardwire's fraud and negligent misrepresentation claims (Counts I and II) must be dismissed because Hardwire did not allege any facts to support its claims. Furthermore, Goodyear requests that Hardwire's claim for tortious interference with economic advantage (Count III) be dismissed because it has not alleged interference with any relationship that Hardwire has with any third party. To address Goodyear's Motion to Dismiss, the Court will analyze each Count in Hardwire's Complaint in turn.

### A. Plaintiff's Fraud and Negligent Misrepresentation Claims

In Count I, Hardwire alleges that Goodyear defrauded it into entering into the Agreement with Goodyear when, during the course of negotiations, "Goodyear Akron executives represented to Tunis that Goodyear would continue to supply Hardwire with Tire Cord as long as it was available, for a period no less than twenty years." (Second Am. Compl. ¶ 16.) Hard-

wire alleges Goodyear executives made this fraudulent representation absent any intention of supplying Hardwire with the tire cord for a period not less than twenty years. Hardwire argues that Goodyear made this misrepresentation with the intent to induce Hardwire to enter into an exclusive supply agreement, that Hardwire justifiably relied upon Goodyear's false representations, and as a result Hardwire has been harmed through the loss of long term access to Goodyear tire cord, loss of access to alternative sources of tire cord, loss of business opportunity, and potential damage to reputation. Goodyear argues that this Count should be dismissed because Hardwire has failed to prove evidence of an actionable false representation or reasonable reliance on the representation.

In Count II, Hardwire alleges that Goodyear's Asheboro plant managers and executives negligently or recklessly misrepresented to Hardwire that Goodyear would supply it with tire cord for no less than twenty years. Hardwire alleges Goodyear made these representation to induce Hardwire to enter into a strategic alliance with Goodyear for Goodyear's benefit and that Hardwire relied upon these representations in designing its business strategy and in soliciting potential clients. As a result, Hardwire alleges it suffered loss of long term access to Goodyear tire cord, loss of access to alternative sources of tire cord, loss of business opportunity and potential reputation damage. Goodyear argues in its Motion to Dismiss that Hardwire has failed to sufficiently plead a cause of action for negligent misrepresentation, because the alleged misrepresentation is a statement regarding present intention to perform a future obligation, which is insufficient to maintain a negligent misrepresentation claim.

Maryland courts have not addressed the issue of where the "wrong" occurs in cases of fraud, or negligent misrepresentation, when the alleged wrongful act and the alleged loss occur in separate jurisdictions. *Cremi*, 955 F.Supp. at 522–24; *Harte–Hanks Direct Marketing/Baltimore, Inc. v. Varilease Technology Finance Group, Inc.*, 299 F.Supp.2d 505, 527 n. 27 (D.Md. 2004) (citing *Philip Morris, Inc.*, 752 A.2d at 230–31, 233 n. 28.) In *Harte–Hanks Direct Marketing/Baltimore, Inc. v. Varilease Technology Finance Group, Inc.*, this Court applied the laws of both Maryland and Michigan to the plaintiff's claims because the Court concluded it was unclear where all the requisite fraudulent acts allegedly occurred due to somewhat contradictory allegations in the claim, and because the requirements for fraud in these two jurisdictions were not determinative on the point in question. 299 F.Supp.2d 505, 527 n. 27. This is not the first time that this Court has been faced with the uncertainty of the law of Maryland on this particular choice of law question.

Earlier, in *Cremi v. Brown*, this Court noted that, "the Maryland courts have not yet specifically spoken as to the issue of where the 'wrong' occurs in cases of pecuniary injury resulting from fraud, negligent misrepresentation or commercial negligence, when the alleged wrongful act or omission occurred in one jurisdiction and the 'loss' by plaintiff in another jurisdiction." 955 F.Supp. at 522. This Court concluded that because the Maryland courts are silent as to the applicable rule, "this court must apply a rule which it reasonably believes would be adopted by the highest Maryland court were it to rule on the question." *Id.* (quoting *Uppgren v. Exec. Aviation Services, Inc.*, 326 F.Supp. 709, 711 (D.Md.1971)). In the *Cremi* case, Judge Kaufman of this Court reviewed other multi-state tort contexts and held that it was reasonable to believe that the

Maryland Court of Appeals would adhere to *lex loci delicti* in multi-state misrepresentation cases and that under *lex loci delicti,* the place of the wrong is the place where the alleged misrepresentations or other wrongful acts took place; not the jurisdiction where the loss was felt. *Id.* at 522–24. Accordingly, the court applied Texas law to the plaintiff's claims, as Texas was the jurisdiction where the misrepresentation occurred. *Id.* at 524. The court, however, did highlight any differences between Texas law and the law of the jurisdiction where the loss was felt, Maryland. *Id.*

In 2000, three years after Judge Kaufman's *Cremi v. Brown* opinion the Maryland Court of Appeals, in *Philip Morris Inc. v. Angeletti,* noted in a footnote that neither the Court of Appeals nor the Court of Special Appeals "has had occasion to discuss the impact of *lex loci delicti* on some of the tort causes of action" and cited Judge Kaufman's *Cremi v. Brown* opinion 358 Md. at 750 n. 28, 752 A.2d at 233 n. 28. The Court of Appeals of Maryland did not resolve this issue in *Philip Morris,* however, as it was not squarely before the court.

As it is unclear what choice of law rule this Court should apply in this case, this Court has certified the question to the Maryland Court of Appeals, pursuant to Md. Cts. & Jud. Proc.Code Ann. § 12–603. The questions to be certified are:

1. What jurisdiction's substantive law governs in the case of fraud where the wrongful act and the plaintiff's injury occur in two different jurisdictions?

2. What jurisdiction's substantive law governs in the case of negligent misrepresentation where the wrongful act and the plaintiff's injury occur in two different jurisdictions?

Based on the foregoing, Goodyear's Motion to Dismiss is STAYED, as to Counts I–II, fraud and negligent misrepresentation, pending clarification from the Maryland Court of Appeals.

### B. Plaintiff's Tortious Interference with Economic Advantage Claim

In Count III, Hardwire alleges Goodyear, aware that tire wire access was necessary to the survival of Hardwire's business, arranged to purchase 100% of the available capacity of a key tire wire type (3x2 cord) from its approved suppliers and provided notice to Hardwire that it intended to discontinue supplying Hardwire this same wire cord type. In so doing, Hardwire alleges, Goodyear cornered the market for this type of wire cord making it impossible for Hardwire to purchase tire cord for its own use. As a result of these actions, Hardwire claims it suffered loss of supply, loss of profits, loss of business opportunity, and potential damage to reputation. In its Motion to Dismiss, Goodyear argues that this Count should be dismissed, because Hardwire fails to allege Goodyear interfered with any economic relationship that Hardwire had with anyone.

The Maryland courts also have not addressed the issue of Maryland choice of law rules in a claim for tortious interference with economic advantage where the wrongful act and the plaintiff's injury occur in two different jurisdiction. Maryland labels this cause of action as "tortious interference with economic relationships." Under Ohio law this cause of action is "tortious interference with prospective business," and North Carolina refers to it as "tortious interference with prospective economic advantage." Based on Maryland choice of law rules, it is unclear whether Ohio, North Carolina, or Maryland law should be applied to determine whether Hardwire has sufficiently stated an actionable claim for tortious interference with economic advantage/prospective busi-

ness/economic relationships. Thus, this Court has certified this question to the Maryland Court of Appeals, pursuant to Md. Cts. & Jud. Proc.Code Ann. § 12–603. The question to be certified is: What jurisdiction's substantive law governs in the case of tortious interference with economic relationships where the wrongful act and the plaintiff's injury occur in two different jurisdictions? Based on the foregoing, Goodyear's Motion to Dismiss Hardwire's claim of tortious interference with economic advantage is STAYED pending clarification from the Maryland Court of Appeals.

*C.   Plaintiff's Contract–Based Claims*

Hardwire asserts four contract-based claims arising out of the parties' May 2002 Purchase Order and Agreement, specifically, anticipatory breach of contract (Count IV), breach of contract (Count V), declaratory judgment (Count VI), and specific performance (Count VII). These claims are based on Hardwire's allegation that Goodyear failed to fulfill its obligation, pursuant to the Agreement, to provide tire cord to Hardwire through 2022. Goodyear argues that Hardwire's contract-based claims must fail because the Agreement, as written, does not constitute an enforceable contract. As a result, Goodyear contends that Hardwire has failed to state contract-based claims upon which relief can be granted because Goodyear has no contractual obligations under the purported Agreement.

In reviewing a complaint for a motion to dismiss, courts bear in mind that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The construction of ambiguous contract provisions is a factual determina-

tion that precludes dismissal on a motion for failure to state a claim." *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.,* 991 F.2d 94, 97 (4th Cir.1993) (citing *Wolman v. Tose,* 467 F.2d 29, 34 (4th Cir.1972)). A contract is ambiguous if " 'susceptible of two reasonable interpretations.' " *World–Wide Rights Ltd. P'ship v. Combe Inc.,* 955 F.2d 242, 245 (4th Cir. 1992) (quoting *American Fidelity & Cas. Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.1965)).

■ In this case, the terms of the Agreement are ambiguous and do not clearly indicate the parties' obligations, if any. For example, paragraph 4 of the Agreement gives Goodyear the right to reject any of Hardwire's orders for tire cord and, upon such rejection, allows Hardwire to purchase tire cord from others. Goodyear asserts that paragraph 4 illustrates that there is no enforceable contract because this provision eliminates any obligation by Goodyear to perform as a result of its ability to reject any Hardwire order. Hardwire argues that the Agreement is enforceable and, when read as a whole, paragraph 4 indicates the parties' intended meaning, which was to provide Goodyear with a "protective provision," enabling it to reject any purchase orders containing terms outside of the Agreement. Hardwire specifically highlights section 1B, which obligates Hardwire to purchase all of its tire cords from Goodyear, and section 1A, which obligates Hardwire to be Goodyear's exclusive sales representative for tire cords, as evidence that the Agreement is an enforceable contract. At a minimum, paragraph 4 of the Agreement is ambiguous and it is unclear what the parties intended.

As noted above, an ambiguous contract provision is a factual determination that precludes dismissal on a motion for failure to state a claim. *See Martin Marietta*

*Corp.*, 991 F.2d at 97. As a result, the Court finds that Goodyear cannot show, at this time, that Hardwire can prove no set of facts in support of its contract-based claims which would entitle it to relief. Based on the foregoing, Goodyear's Motion to Dismiss Hardwire's claims of: anticipatory breach of contract, breach of contract, declaratory judgment, and specific performance of the contract (Counts IV—VII) is DENIED.

## CONCLUSION

For the reasons stated above, Goodyear's Motion to Dismiss is STAYED as to Counts I—III and DENIED as to Counts IV—VII. A separate Order consistent with this Memorandum Opinion will follow.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 18th day of March, 2005, HEREBY ORDERED:

1. That The Goodyear Tire & Rubber Company's Motion to Dismiss is STAYED as to Counts I–III pending decision of the Court of Appeals of Maryland;

2. That The Goodyear Tire & Rubber Company's Motion to Dismiss is DENIED as to the Counts IV–VII;

3. That The Goodyear Tire & Rubber Company shall file an ANSWER to Counts IV–VII of Plaintiff's Complaint within 20 days of this Order;

4. That by separate Order, the Court will certify the conflict of law questions related to Counts I–III of Plaintiff's Complaint to the Maryland Court of Appeals; and

5. That the Clerk of the Court transmit copies of this Order, the Certification Order, and the accompanying Memorandum Opinion to the Maryland Court of Appeals and to counsel for the parties.

## CERTIFICATION ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 18th day of March, 2005, HEREBY ORDERED:

1. That pursuant to Md. Cts. & Jud. Proc.Code Ann. §§ 12–601 and 12–603, the United States District Court for the District of Maryland hereby certifies the following potentially dispositive questions of law to the Court of Appeals of Maryland:

    i. What jurisdiction's substantive law governs in the case of fraud where the wrongful act and the plaintiff's injury occur in two different jurisdictions?

    ii. What jurisdiction's substantive law governs in the case of negligent misrepresentation where the wrongful act and the plaintiff's injury occur in two different jurisdictions?

    iii. What jurisdiction's substantive law governs in the case of tortious interference with economic relationships where the wrongful act and the plaintiff's injury occur in two different jurisdictions?

2. That the foregoing Memorandum Opinion shall constitute the statement of relevant facts required by Md. Cts. & Jud. Proc.Code Ann. § 12–606; and

3. That pursuant to Md. Cts. & Jud. Proc.Code Ann. § 12–604, the Court of Appeals of Maryland, acting as the receiving court, may reformulate these questions; and

4. That names and addresses of counsel of record are:

    a. Plaintiff: Hardwire LLC Charles O Monk, II Saul Ewing LLP 100 S Charles St 15th Fl Baltimore, MD 21201–2773

b. Defendant: The Goodyear Tire & Rubber Company Howard A Wolf Rodda Epstein Becker and Green PC 1227 25th St. NW Ste 700 Washington, DC 20037–1175

5. That the Clerk of the Court transmit copies of this Certification Order, the Court's Order, and the accompanying Memorandum Opinion to the Maryland Court of Appeals and to counsel for the parties.