**Brenda CURTIS and Alvin Williamson, Plaintiffs–Appellants,**

v.

**CITIBANK, N.A., Citicorp North America, Inc. and Citicorp Securities, Defendants–Appellees.**

Docket No. 99–7957.

United States Court of Appeals, Second Circuit.

Argued: March 10, 2000

Decided: Sept. 19, 2000

Stephen T. Mitchell, New York, New York, for Plaintiffs-Appellants.

Bettina B. Plevan, New York, New York (James M. Beach, Proskauer Rose LLP, New York, New York, of counsel), for Defendants–Appellees.

Before: FEINBERG, CARDAMONE, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

In a suit against their employer for racial discrimination, plaintiffs, two black employees of a bank, amended their complaint once, but their request to file a second amended complaint was denied by the magistrate judge to whom the case had been assigned. Plaintiffs appealed this denial to the district court and, while waiting for that court to rule, filed their proposed second amended complaint as a new complaint against their former employer since, in the interim, both plaintiffs were no longer employed by the bank. The circumstances of their departures were new causes of action added to the complaint in the second suit—one claim was retaliation, the other was for constructive discharge. When the district court ruled, it affirmed the magistrate judge's denial of leave to file a second amended complaint. It also dismissed, on defendants' motion, plaintiffs' new complaint filed in the second suit, on the ground that it was duplicative of plaintiffs' first suit.

■ A court must be careful, when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same. Here they are not entirely duplicative. Thus, dismissal in whole was inappropriate and we must remand this case.

## BACKGROUND

Plaintiffs, Brenda Curtis and Alvin Williamson, first filed an action against Citibank, N.A., Citicorp North America, and Citicorp Securities, Inc. (collectively Citibank) on February 14, 1997 (*Curtis I*), alleging discrimination in employment on account of race under federal and New York law. An offensive electronic mail message whose "humor" derived from ethnic, racial, and gender stereotypes lies at the core of the complaint in *Curtis I*. On January 28, 1997 a then current Citibank employee had sent the e-mail to various Citibank employees at their work e-mail addresses, and at least one Citibank employee allegedly forwarded the e-mail to others. Plaintiffs allege discrimination in Citibank's handling of the e-mail message as well as in other settings.

Curtis and Williamson initially brought *Curtis I* as a class action on behalf of all African–American Citibank employees who had worked with, or been supervised or evaluated by, the senders or recipients of the e-mail. However, they failed timely to file a motion seeking class certification, and therefore had to pursue their claims individually. The case was originally assigned to Judge Kimba M. Wood of the United States District Court for the Southern District of New York. She referred it to Magistrate Judge Theodore H. Katz for pretrial supervision and to make reports and recommendations on dispositive motions. The case was later transferred on December 16, 1998 from Judge Wood to Judge Deborah A. Batts.

Magistrate Judge Katz set July 30, 1997 as an initial deadline for amending the February 1997 complaint, and at plaintiffs' request, permitted them to serve a proposed amended complaint on that date, and to move for further amendment by September 1, 1997. Plaintiffs actually served their proposed amended complaint on defendant in August 1997. The amended complaint added two Citibank-related corporations as defendants, and included for the first time Curtis' allegation of sex discrimination. The amended complaint was filed with the district court on September 3, 1997. Subsequently, plaintiffs moved to amend it on October 17, 1997, and Magistrate Judge Katz granted the motion on January 5, 1998 without any reference to the effective date of the amendment.

By letter dated April 10, 1998, plaintiffs' counsel, Stephen Mitchell, Esq., sought an extension of the discovery deadline and leave to amend the complaint to add allegations of "numerous retaliatory actions," including Curtis' firing in March 1998. On April 28, Magistrate Judge Katz extended the discovery deadline by two months to July 15, 1998, ordered that further non-technical amendments to the complaint would not be permitted except on a showing of good cause, and directed plaintiffs to propose amendments for good cause in another letter. In a conference on June 2, 1998 the magistrate judge stated that he would allow the amendments as to Curtis, but deferred decision as to Williamson. Plaintiffs submitted the additional letter, alleging retaliation against both plaintiffs.

At 11 p.m. on July 15, the last day for completion of discovery, plaintiffs served extensive document requests and interrogatories. The documents requested included the personnel files for more than 35 Citibank employees, all writings relating to the investigation and discipline of Citibank employees in connection with the offensive e-mail, and unredacted copies of all redacted documents that had been produced during discovery. In denying these requests on September 23, 1998 the magistrate judge ruled that they were untimely and that plaintiffs had failed to show good cause for their failure to serve them earlier. In September 1998 Williamson resigned from Citibank. At the September 23 conference, plaintiffs sought leave to add Williamson's constructive discharge claim and to reopen discovery.

Meanwhile, in August 1998 plaintiffs had moved to "correct" the complaint by revising it to allege a pattern or practice of discrimination by Citibank, which motion was denied at a conference held on October 14, 1998. Also at that conference, the magistrate judge granted leave to add specific paragraphs from plaintiffs' proposed amendments to the complaint, and ordered plaintiffs to serve the amended complaint by October 19, 1998, informing defense counsel that they would have two days to respond. The court and defense counsel both insisted they never received the second amended complaint. Defense counsel stated in an affidavit that she telephoned plaintiffs' counsel on the afternoon of October 19 to ask how the amended complaint would be delivered. Counsel reported that attorney Mitchell seemed surprised by the question and said that he was unaware that he was required to submit and serve a copy of the second amended complaint. He added that he would be unable to serve it before October 21.

Because neither the district court nor the plaintiffs had received a copy of the second amended complaint, and the court had not received any request to extend the deadline, on November 4, 1998 the magistrate judge issued an order denying plaintiffs leave to amend the complaint. Five days later, plaintiffs requested reconsideration of the denial, supporting the request with an affidavit from a MailBoxes Etc. store manager stating that "[o]n or about October 19," Mr. Mitchell had dropped off two packages for mailing—one to a federal judge in New York and one to a law firm in New York City. Several days later Mr. Mitchell sent another letter to the trial

court asserting that he had given a copy of the amended complaint "to a service to be mailed on or about October 19," and that he had given no other documents to that service to be mailed around that time. Unpersuaded, the magistrate judge denied the request for reconsideration on November 23, 1998.

Plaintiffs appealed the November 23 denial to the district court. While awaiting Judge Batts' decision in *Curtis I*, and precisely because they were unsure what it would be, plaintiffs filed on January 26, 1999 the second amended complaint from *Curtis I* as the present action (*Curtis II*). In an order entered July 27, 1999, the district court affirmed all Magistrate Judge Katz's rulings and dismissed *Curtis II* as duplicative of *Curtis I* and "an attempt to circumvent Judge Katz's orders." Plaintiffs appeal the July 27 order dismissing *Curtis II*.

## DISCUSSION

As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation."); *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991); *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (in banc). The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion. *See Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236; *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (affirming stay of declaratory judgment action on patent's validity in Delaware while patent infringement suit in Illinois proceeded); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir.1989). We review the exercise of this power for abuse of discretion. *See Adam*, 950 F.2d at 92.

The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or *res judicata*. As the Supreme Court stated over 100 years ago in *United States v. The Haytian Republic*, 154 U.S. 118, 14 S.Ct. 992, 38 L.Ed. 930 (1894), "[T]he true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." *Id.* at 124, 14 S.Ct. 992. The two doctrines serve some of the same policies. The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg.*, 342 U.S. at 183, 72 S.Ct. 219. The doctrine is also meant to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam*, 950 F.2d at 93.

Similarly, while the doctrine of claim preclusion serves the interest of society and litigants in assuring the finality of judgments, it also fosters judicial economy and protects the parties from vexatious and expensive litigation. *See* 18 James Wm. Moore et al., Moore's Federal Practice ¶ 131.12[2], [4][a] (3d ed.1999). Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. *See Kerotest Mfg.*, 342 U.S. at 186, 72 S.Ct. 219 (stay); *Devlin v. Transportation Communications Int'l Union*, 175 F.3d 121, 129–30 (2d Cir.1999) (remanding for consideration of consolidation); *First City*, 878 F.2d at 80 (dismissal without prejudice); *National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45–46 (2d Cir.1961) (parties enjoined). Of course, simple dismissal of

8

the second suit is another common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time. *See, e.g., Zerilli v. Evening News Ass'n,* 628 F.2d 217, 222 (D.C.Cir.1980); *Walton,* 563 F.2d at 70. It may be that the district court on the remand we direct may wish to avail itself of one of these remedies in the handling of the two Curtis suits. Such action, if any, is one for the exercise of the district court's discretion in the comprehensive management of litigation in its court.

### I Issues Arising After First Amended Complaint Was Filed

Under claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Whether there is claim preclusion depends upon whether the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit. *See NLRB v. United Techs. Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983). Claim preclusion is sometimes confused with issue preclusion, a related doctrine, which "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley,* 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994).

While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. *See SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1464 (2d Cir.1996). The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims. *See id.*

Further, denial of a motion to amend will not inevitably preclude subsequent litigation of those claims set out in a proposed new complaint. *See Flaherty v. Lang,* 199 F.3d 607, 613 (2d Cir.1999). Only denial of leave to amend *on the merits* precludes subsequent litigation of the claims in the proposed amended complaint. *See id.* at 613–15. Here, the denial of leave to file the second amended complaint was clearly not based on the merits, but rather on the procedural ground of untimeliness. Thus, the claim preclusion effect of *Curtis I*—assuming a final judgment will be rendered in that case—will not prevent litigation of claims arising after the filing of plaintiffs' first amended complaint in *Curtis I.*

Some courts have held broadly that denial of a motion to amend operates like a judgment on the merits for claim preclusion purposes. *See King v. Hoover Group, Inc.,* 958 F.2d 219, 222–23 (8th Cir.1992); *Yaba v. Roosevelt,* 961 F.Supp. 611, 621 (S.D.N.Y.1997). In *Northern Assurance Co. of America v. Square D Co.,* 201 F.3d 84, 87–88 (2d Cir.2000), we cited *King* but explained the rationale for the bar. The bar is based on the rule that a plaintiff must bring suit against the same defendant on all claims that relate to the same conduct, transaction or event at the same time. But when a plaintiff's motion to amend the complaint is denied and the plaintiff subsequently brings the amendments as a separate lawsuit, "it is not the actual decision to deny leave to amend that forms the basis of the bar.... In fact, the actual decision denying leave to amend is irrelevant to the claim preclusion analysis." *Northern Assurance,* 201 F.3d at 88; *see also Integrated Techs., Inc. v. Biochem Immunosystems, (U.S.) Inc.,* 2 F.Supp.2d 97, 101 n. 5 (D.Mass.1998). Rather, the normal claim preclusion analysis applies

and the court must assess whether the second suit raises issues that should have been brought in the first. As explained above, some of the *Curtis II* claims could not have been brought in *Curtis I*.

One peculiarity of this case is that the second amended complaint was filed on September 3, 1997, before plaintiffs moved to amend their complaint on October 17, 1997 and therefore before the court ordered the amendment on January 5, 1998. As noted earlier, the district court order did not specify an effective date of filing for the second amended complaint. Although the premature filing of the complaint will be to the plaintiffs' advantage in litigating *Curtis II*, it seems most sensible to take September 3, 1997 as the filing date because necessarily, the second amended complaint alleges no facts occurring after that date.

Because claim preclusion would not bar litigation of events arising after the first amended complaint was filed in *Curtis I*, it was an abuse of the district court's discretion to dismiss those claims as duplicative. Plaintiffs would be entitled to bring them after the conclusion of *Curtis I*, and we see no reason why they may not bring them while *Curtis I* is still pending. Now that neither plaintiff is in Citibank's employ, no new events are likely to occur that would be relevant to *Curtis II*, so there is no obvious reason for plaintiffs to delay bringing suit.

II  Issues Arising Before First Amended Complaint Was Filed

The district court correctly held that plaintiffs may not file duplicative complaints in order to expand their legal rights. *See Oliney v. Gardner,* 771 F.2d 856, 859 (5th Cir.1985) (plaintiff failed to notify court that second complaint was related to first, in which a motion to dismiss was pending); *Walton,* 563 F.2d at 71 (plaintiff filed second complaint to evade waiver of jury trial in her first complaint); *cf. Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223–24 (7th Cir.1993) (no abuse

of discretion in dismissing second complaint despite possibility that first would be dismissed for untimely service). But this rule applies only to the *Curtis II* claims arising out of the same events as those alleged in *Curtis I*. The trial court did not abuse its discretion in dismissing those claims, which would have been heard if plaintiffs had timely raised them. Plaintiffs requested leave to file the second amended complaint in *Curtis I* two months after the close of discovery, more than a year after the deadline for amending the complaint, and after the magistrate judge specifically had forbidden further amendments to the complaint except for good cause. Moreover, much of the second amended complaint alleged events that had occurred prior to *Curtis I*'s filing. If plaintiffs had timely raised those allegations, they would have been heard in *Curtis I*. By filing them in a second action, plaintiffs attempted to avoid the consequences of their delay. It was not an abuse of discretion to prevent them from doing so.

## CONCLUSION

While by filing *Curtis II* the plaintiffs were clearly trying to avoid losing their claims—which was the effect of the denial of leave to amend the *Curtis I* first amended complaint—they were and are entitled to have some of those claims heard. The district court's purpose in denying leave to amend in *Curtis I* was to keep that case manageable, and given the many delays and disputes over the scope of discovery in *Curtis I*, its concerns were well-founded. Allowing plaintiffs to file a new complaint on their subsequently arising claims does not vitiate that purpose.

The dismissal of *Curtis II* therefore must be reversed in part. Plaintiffs may proceed on their *Curtis II* claims of retaliation and constructive discharge to the extent they arise out of events occurring subsequent to the filing of the first amended complaint in *Curtis I*. This result balances the trial court's need to manage and

ultimately decide its cases with the plaintiffs' right to litigate all of Citibank's allegedly unlawful conduct. Once *Curtis I* is decided, questions of issue preclusion may arise, but it would obviously be speculative to discuss them now.

Accordingly, we reverse the dismissal of *Curtis II* in its entirety as duplicative of *Curtis I* insofar as the order dismissed non-duplicative claims. To the extent that Curtis' retaliation claim and Williamson's constructive discharge claim arose out of events occurring after the first amended complaint was filed, their dismissal on procedural grounds in *Curtis I* does not bar their refiling as duplicative in *Curtis II*. In all other respects, however, the district court acted within its discretion in dismissing the claims asserted in *Curtis II* that were duplicative of those in *Curtis I* and that portion of its order is affirmed.

Affirmed in part, reversed in part, and remanded to the district court for further proceedings consistent with this opinion. Each party is to bear its own costs.