Stacey **BLAKE**, and others similarly situated, Plaintiff,

v.

James **BATMASIAN**, an individual d/b/a Investments Limited, and individually, and Marta Batmasian, an individual d/b/a Investments Limited and individually, and LSA Management Inc., a Florida corporation, Defendants.

CASE NO. 15-81222-CIV-MAR-RA/MATTHEWMAN

United States District Court, S.D. Florida.

Signed June 22, 2016

Filed June 23, 2016

---

Chelsea A. Lewis, Chris Kleppin, Glasser & Kleppin, P.A., Plantation, FL, for Plaintiff.

Bridget Ann Berry, Greenberg Traurig, West Palm Beach, FL, Heather Elise Kruzyk, George Louis Sigalos, Simon, Sigalos, LLP, Boca Raton, FL, Jennifer Boussy Carroll, Simon Sigalos & Spyredes PA, Boca Raton, FL, for Defendants.

## ORDER ON MOTION TO CONDITIONALLY CERTIFY CLASS OF OPT-IN PLAINTIFFS

KENNETH A. MARRA, United States District Judge

THIS CAUSE is before the Court upon Plaintiff's Amended Motion to Permit Court Supervised Notice to Employees of Their Opt-In Rights [DE 1-2] ("Motion"). The Motion is fully briefed and ripe for review. The Court has carefully considered all relevant filings and is otherwise fully advised in the premises.

### Introduction

Defendants James and Marta Batmasian, doing business as Investments Limited, are in the business of leasing commercial and residential properties. DE 52 at 13. Plaintiff, Stacey Blake ("Blake"), is asserting claims under the Fair Labor Standards Act (the "FLSA") for alleged unpaid overtime work performed as a former leasing agent. He seeks to represent a class of leasing agents, paralegals, "and other such employees," who worked for Defendants from August 3, 2012 to the present. Attached to the Motion are the Notices of Consent of Karla Sotomayor, another leasing agent, and Lesha Rosario, a legal secretary, who desire to opt-in to this action. These notices state that while working for Defendants, the employees were told what to do and ultimately reported to James and Marta Batmasian, that the allegations in the Complaint pertain to them, that they "worked many hours of overtime

without being paid for it," and was sometimes given vouchers, for products or services in lieu of monetary compensation. DE 1-2, 61-63. Blake and Karla Sotomayor have also submitted. Declarations which aver that their main tasks, and the main tasks of all leasing agents, was to lease unoccupied commercial spaces to prospective tenants, to renew leases of those tenants whose leases were expiring, and to handle customer service issues with existing tenants. DE 1-2, 65-68. They aver that they were completely dependent on the Batmasians for their livelihood while they worked for them, that they worked overtime hours every week that they worked for Defendants, and they were given no compensation for any of the overtime hours worked. *Id.* Blake alleges that Defendants have a business wide policy to never pay overtime to any employee. It is this policy which Blake argues should give rise to the formation of a collective action, because no group of employees is exempt from it. Blake make this motion for court-supervised notice to other current and former employees to provide them an opportunity to join this lawsuit to seek unpaid overtime wages and other damages.

### Legal Standard for FLSA Class Certification

■ Under the FLSA, employees may maintain collective actions to recover unpaid wages where the employees are "similarly situated" and give consent to become a party in a writing filed with the court. 29 U.S.C. § 216(b). District courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir.1996).

■ The initial issue is whether Blake has made the requisite showing to justify conditional certification of a collective action and court-authorized notice. In *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208 (11th Cir.2001) ("*Hipp*"), the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry. *Id.* at 1219. Under the first tier, which is labeled the "notice stage," the district court must decide, "usually based only on the pleadings and any affidavits which have been submitted[,] . . . whether notice of the action should be given to potential class members." *Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003)). Before notice is given, a "district court should satisfy itself that there are other employees of the [defendant-] employer who desire to 'opt-in' and are 'similarly situated' . . . ." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir.1991).

■ "Similarly situated" is not defined in the FLSA. Nor has the Eleventh Circuit Court of Appeals "adopted a precise definition of the term." However, the Court of Appeals has provided some guidance. *See Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259–60 (11th Cir.2008). Employees should be " 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* at 1259 (citing *Dybach*, 942 F.2d at 1568). "Similar" does not mean "identical." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.1996) (citation and internal quotation marks omitted). At the same time, however, "a plaintiff must make some rudi-

mentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of duties and pay provisions." *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1314 (M.D.Ala.2002), *cited with approval in Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir.2007). "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

■ The plaintiffs' burden at the notice stage "is not heavy." *Grayson*, 79 F.3d at 1097. "The plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." *Id.* That burden may be satisfied by "substantial allegations of class-wide discrimination, that is, *detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.*" *Id.* (citation and internal quotation marks omitted, emphasis supplied). Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F.Supp.2d 1211, 1220 (M.D.Fla.2003) (citing *Dybach*, 942 F.2d at 1567–68) (emphasis added). Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court. *Id.*

■ The second stage is "typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214). Armed with "much more information," the court "makes a factual determination on the similarly situated question." *Id.* (quoting *Moo-*

*ney*, 54 F.3d at 1214). Factors that the court may consider are the "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Morgan*, 551 F.3d at 1261 (citation, alterations and internal quotation marks omitted). At this second stage, the similarities "must extend beyond the mere facts of job duties and pay provisions and encompass the defenses to some extent." *Id.* at 1262 (citation and internal quotation marks omitted). Depending on the outcome of the similarly situated evidentiary analysis, the district court either allows the collective action to proceed to trial, or decertifies the class, dismissing the opt-in plaintiffs without prejudice and permitting the original plaintiff to go to trial on his individual claims. *See id.* (citing *Hipp*, 252 F.3d at 1214).

## Analysis

Here, Blake seeks to create a collective action against James Batmasian and Marta Batmasian, d/b/a Investments Limited, and also against them in their individual capacities as managers and supervisors. Blake's proposed collective action would include all employees who were not paid overtime by Defendants but who were instead sometimes given vouchers from the Defendants' tenants in lieu of the overtime payments. Blake proposes to represent a class of "leasing agents, paralegals," and "all other similarly situated employees," who assist or assisted the Defendants' real estate enterprise and were subjected to Defendants' policy and practice of refusing to pay overtime to compensate employees who worked more than 40 hours per week. DE 1-2 at 58 of 79. Blake asserts there exists a common factual nexus linking the putative

class members to him, in that all members: (1) worked in the same geographic location, (2) experienced violations during the relevant time period, (3) were subjected to the Defendants' policy and practice of refusing to pay overtime pay when due, and occasionally received vouchers in lieu of payment, and (4) reported to Defendant James and Marta Batmasian.

Blake attaches to his Motion three Notices of Consent. *See* DE 1-2 at 61-63, Ex. 1. The Notice is a form with blanks for the name, address, approximate work dates, and job title. One is made by Blake himself, one is made by Karla Sotomayor,[1] also a leasing agent, and one is by Lesha Rosario, a legal secretary. The Notices all have the following form language: "I was told what to do and ultimately reported to James and Marta Batmasian. I have read the First Amended Complaint in this matter. I know the ... Plaintiff. I agree with the allegations set forth in the First Amended Complaint, and they pertain to me, too ... I wish to assert a claim against

James and Marta Batmasian in this lawsuit for unpaid overtime compensation, as I was not paid my overtime, but at times given vouchers instead." *Id.* Blake has not submitted any other information or evidence regarding Ms. Rosario.

Blake also submits two declarations; one of his own, and one by Karla Sotomayor.[2] DE 1-2 at 65-68, Ex. 2. They are largely identical and state, in pertinent part, as follows:

2. "Defendants cheated [us] out of [our] overtime in the same manner ... [We were] not compensated in any manner for the overtime hours that [we] worked, but was occasionally provided vouchers to massage parlors and other businesses in lieu of overtime. [We] therefore worked numerous overtime hours for the Defendants, without proper payment of ... overtime."

3. "All commercial leasing agents, and myself, reported directly to Daron Tersakyan, who is the Director of Commercial Leasing, and James and Marta Batmasian,

---

1. Defendants' argument that Ms. Sotomayor's claim is facially barred by the doctrine of claims splitting is rejected. The rule against splitting causes of action is "an aspect of the doctrine of res judicata." *Tyson v. Viacom, Inc.,* 890 So.2d 1205, 1210 (Fla.Dist.Ct.App. 2005) (quoting *Froman v. Kirland,* 753 So.2d 114, 116 (Fla.Dist.Ct.App.1999)). "[A]s a general rule the law mandatorily requires that all damages sustained or accruing to one as a result of a single wrongful act must be claimed and recovered in one action or not at all." *Id.* (internal citations omitted). The rule against splitting causes of action "reflects that a district court, as part of its general power to administer its docket, has the authority to stay or dismiss a suit that is duplicative of another case then pending in federal court." *Zephyr Aviation III, L.L.C. v. Keytech Limited,* No. 8:07–CV–227–T–27TGW, 2008 WL 759095 at *6 (M.D.Fla. Mar. 20, 2008) (quoting *Curtis v. Citibank,* N.A., 226 F.3d 133, 138 (2d Cir. 2000) (internal citations omitted)).

However, a litigant has the right to file *two different lawsuits* against the same defendant.

As to Ms. Sotomayor, she has brought a five count complaint in state court for (1) Hostile Work Environment Sexual Harassment; (2) Quid Pro Quo Sexual Harassment; (3) Violation of the FCRA—Terms and Conditions of Employment; (4) Violation of the FCRA—Retaliation; and (5) Intentional Infliction of Emotional Distress. Blake states, and Defendants do not state otherwise, that Ms. Sotomayor does not seek overtime damages in her state court case. Assuming these representations to be true, the instant case and Ms. Sotomayor's state court case do not arise out of the same alleged wrongful acts, and the causes of action do not involve the same elements. In any event, it is premature at this juncture to make such a determination.

2. Blake also claims to include the affidavit of Sonya Witt-Bahls, but there is no such affidavit attached. DE 1-2 at 53, ¶ 9.

and we would have to obey what they said. Routinely, the Batmasians would order the commercial leasing agents to do things ... My main tasks were to lease unoccupied commercial space to prospective tenants, to renew leases of those tenants whose leases were up, and to handle customer service issues with existing tenants. I was paid a salary that was intended by the Defendants to compensate me for the first 40 hours worked and I was given no compensation for any of the overtime hours, as the Defendants do not hesitate to state that they do not pay overtime."

4. "I was completely dependent on the Defendant Batmasians for my livelihood while I worked there."

5. "I worked overtime hours every week that I worked for the Defendants (more than 40) and I filed this lawsuit to recoup this overtime."

Both Blake and Ms. Sotomayor worked similar hours, were paid similarly, reported to the same people, and are in all other respects similarly situated as they were required to do the same things for the Defendants day-in-and day-out. *Id.* Blake asserts that "the affidavits clearly set forth that the employees were similarly situated with respect to the tasks they had to perform (all to assist in the operation of a commercial real estate enterprise), who

they reported to, and how they were paid (denied overtime)." DE 1-2 at 51.[3]

Blake "acknowledges that it may be appropriate to form sub-classes within the collective action for groups of different employees, such [as] leasing agents in one sub-class, marketing representative in another, paralegals in another, etc." DE 1-2 at 53, ¶ 10. Blake's contention is that the factual nexus which binds him and the potential class members together as victims is Defendants clearly instituted policy not to pay any employees overtime. "In the interest of facilitating the discovery of the names and addresses of 'all employees similarly situated', Blake intends to serve a Request to Produce to Defendant to compile or provide the names and addresses of all its similarly situated employees, namely leasing agents, paralegals, and other employees who assist the real estate enterprise employed by the Defendant, who have claims that arise within 3 years of the filing of this lawsuit." DE 1-2 at 58.

The Court must now determine whether Blake has established the requirements to create classes of employees *who assisted in the operation of a commercial real estate enterprise* and who were not paid overtime. As previously discussed, section 216(b) of the FLSA permits an employee to bring an action against his employer for FLSA violations on behalf of himself and

---

3. Blake next states, "[a]dditionally, attached hereto as Exhibit 3 is a memo from Defendant James Batmasian where he is demanding that Sotomayor obtain vouchers from a massage parlor for sexual favors so Defendant can dole those out to his business associates and employees as bonuses to constitute his sick, perverted, and unlawful concept that they are an appropriate replacement for overtime pay." This is an inaccurate description of what Exhibit 3 actually states. *Most notable is the fact that Ms. Sotomayor's name does not appear anywhere on Exhibit 3.* Exhibit 3 consists of two emails. The first one is from Jim Batmasian to Alyn Weinbaum, Glen Haddad; and Rob Gorman, with a cc to Jason Lazar. Subject: Follow Up. Text: "Get me $3-4,000 worth of 1-hour free massages from our spa tenant at 197 S. Federal. Get like 50 of them and the spa can turn them in towards rent AS THEY ARE USED. I think that's the best way to do it." The second email is from Alyn Weinbaum to Jim Batmasian, subject: Re: follow up. Text: "I am meeting with her today to get the agreement signed."

"other employees similarly situated" to Blake. 29 U.S.C. § 216(b). To be "similarly situated," the other employees' *positions* need only be similar, not identical. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.1996). To meet this burden, a plaintiff may not rest on mere allegations but must, through affidavit or other sworn testimony, establish that the putative "opt-in" employees are "similarly situated" to him in their job descriptions and claims alleged. *See Hipp*, 252 F.3d at 1217–1219 ("The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engaged defendants' affidavits to the contrary."); *Alvarez v. Sun Commodities, Inc.*, 2012 WL 2344577, *2 (S.D.Fla. June 20, 2012) ("[A] plaintiff cannot rely on speculative, vague, or conclusory allegations" but instead must support their case with "detailed allegations supported by affidavits.") (internal citations omitted).

In the instant Motion, Blake offers the Declaration of Ms. Sotomayor to establish said similarity. DE 1-2, Ex. 2 at 67-68. Notwithstanding the dates worked, the Declarations are largely identical. They both worked as commercial leasing agents, reported directly to Daron Tersakyan, and their main tasks were to lease unoccupied commercial space to prospective tenants, to renew leases of those tenants whose leases were expiring, and to handle customer service issues with existing tenants. Of course it is alleged that each worked overtime hours every week and was not compensated in any manner for the overtime hours worked. For purposes of a class of "commercial leasing agents," Blake has met the lenient standard for conditional certification, even though he has only one proposed opt-in.[4]

As far as Blake's proposed subgroups of marketing representatives, assistant property managers,[5] paralegals, and legal assistants/secretaries ("etc."), Blake

---

**4.** *Wynder v. Applied Card Systems, Inc.*, No. 09-80004-CIV-MARRA, 2009 WL 3255585, at *3 (S.D.Fla. Oct.7, 2009) (conditional certification granted based on affidavit of named plaintiff and one other putative class member); *Guerra v. Big Johnson Concrete Pumping, Inc.*, 05-14237-CIV, 2006 WL 2290512, at *4 (S.D.Fla.2006) (evidence that at least one other employee desires to opt in is the "minimum quantum of evidence" necessary to raise a plaintiff's contention "beyond one of pure speculation").

The Court notes that Mr. Tersakyan's affidavit states that "[t]ypically, there were approximately five or six commercial leasing agents employed by LSA Management, Inc. at any given time." He further states that "from July of 2012 to [the] present, there have been fewer than 12 individuals who were employed by LSA Managment, Inc. as commercial leasing agents." DE 14-1, ¶ 5. At the second stage, if the number of opt-ins is 12 or less, the Court will consider whether creating a class of that size is appropriate.

**5.** Blake alleges that he worked as a leasing agent for Defendants from approximately December 2012 until August 2014, and then as an assistant property manager until on or about March 2, 2015. Compl. [DE 28] ¶ 16, *see also* Blake's Notice of Consent, DE 1-2 at 61 of 79. "As assistant property manager, Blake performed largely rote data entry and data processing tasks dealing with the renewal of a lease, eviction, termination, or initiation of a lease . . ." *Id.* In the instant motion, Blake seeks to "represent a class of leasing agents, paralegals, and other such employees." Compl. DE 1-2, ¶ 3 and p. 58 of 79. Blake does not mention including in the potential class the position of assistant property managers until his Amended Reply (DE 20). Indeed, Blake's description of the potential class varies from page to page, and commonly ends with "etcetera." As discussed above, Blake's vision of the class (everyone who assisted in the operation of the Batmasians' commercial real estate enterprise and who were denied overtime) is too broad, vague and does not meet the initial minimum legal

has failed to provide any factual allegations as to how the respective job duties of the members of the proposed sub-groups are similar to his own. Indeed, he provides only one declaration other than his own, and that declaration, from Ms. Sotomayor, a leasing agent, is what made it possible for the Court to find similarity between Blake and Ms. Sotomayor and allow this case to go forward, conditionally, as to leasing agents. But the complete lack of information as to Blake's other proposed opt-in, Leisha Rosario, utterly fails to satisfy even the lenient standard suggested in *Hipp. See Hipp*, 252 F.3d at 1217; *see also Dybach v. State of Fla. Dep't. of Corrs.*, 942 F.2d 1562 (11th Cir.1991). As the Court previously noted, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, *beyond* the mere facts of job duties and pay provisions." *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1314 (M.D.Ala.2002) (emphasis provided). Here, Blake has not even shown that Ms. Rosario is, in any way, similarly situated to him in either her job requirements or her pay provisions. Moreover, Blake's and Ms. Sotomayor's Declarations fail to address how the job duties of the proposed sub-groups are similar to Blake's and how their joining this action would serve the interests of judicial economy.

Defendants have submitted the Affidavit of Jason Lazar, Defendants' general coun-sel. DE 13-1. Mr. Lazar affirms that he knew Leisha Rosario because she was employed as a legal assistant by LSA Management, Inc. and he supervised her. Mr. Lazar affirms that Ms. Rosario's duties and responsibilities included typing or revising legal documents, organizing legal research, scheduling appointments and assisting with any preparations for mediations, court appearances, and any other tasks necessary to support Mr. Lazar in carrying out his duties as general counsel. He affirms that Ms. Rosario was not a salaried employee, but rather, was paid on an hourly basis and was required to clock in and out when reporting to work, leaving work, and taking breaks. He states that LSA Management, Inc.'s "Compensation Report" pertaining to Ms. Rosario shows that when Ms. Rosario occasionally worked in excess of 40 hours in a given work week, she was paid overtime for any such excess hours. The "Compensation Report" is attached to his affidavit. Finally, Mr. Lazar affirms that Ms. Rosario was not eligible to receive any performance-based bonuses because her work was confined to the legal department and did not involve commercial leasing. *Id.*

Blake does not "engage defendants' affidavit to the contrary" *in any fashion. Grayson*, 79 F.3d at 1097. These facts clearly establish that Ms. Rosario was not similarly situated to Blake in either her job duties or pay provisions, and he has not attempted, either before or after Mr.

---

requirements. As for including assistant property managers in the proposed class, since this group of employees are raised for the first time in a reply brief, the Court cannot consider it. *See Herring v. Secretary. Dept. of Corrections*, 397 F.3d 1338 (11th Cir.2005) (citation omitted) (stating, "[a]s we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.' "). Blakes' Declaration, oth-er than stating his "job position with the Batmasians was leasing agent and then property manager," makes no other statement regarding his position as an assistant property manager. Furthermore, Blake's motion does not mention his job duties as an assistant property manager or state that there is any current or former assistant property manager who would like to opt-in.

Lazar filed his affidavit, to demonstrate otherwise. Mr. Lazar's factual specificity highlights the cursory and inadequate allegations Blake has made to support a proposed sub-class of paralegals or secretaries, or any other group of employees, other than leasing agents. As noted in *Brooks v. A Rainaldi Plumbing, Inc.*, the initial burden for certification is low, but "it is not invisible." 2006 WL 3544737, *2 (M.D.Fla. 2007).

### Conclusion

Upon finding that Blake is similarly situated to Ms. Sotomayor, a potential opt-in, this Court will conditionally certify a class of commercial leasing agents, order that appropriate notice be given to putative class members, and the action continue as a collective action throughout the discovery process.

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1) Plaintiff's Amended Motion to Permit Court Supervised Notice to Employees of Their Opt-In Rights [DE 1-2] is granted in part and denied in part. This collective action is conditionally certified pursuant to 29 U.S.C. § 216(b) as a collective of:

> All current and former commercial leasing agents who work and/or worked for James Batmasian, Marta Batmasian and/or Investments Limited ("Defendants") in the three years preceding the date of this Order and the present.

2) Plaintiff's Amended Motion to Permit Court Supervised Notice to Employees of Their Opt-In Rights [DE 1-2] is denied to the extent it seeks conditional class certification of Defendants' employees other than leasing agents.

3) The parties shall confer and attempt to agree to a proposed notice to the collective class members and shall file it within 20 days of the date of this Order. The Court instructs the parties to confer and make every attempt to reach a consensus on the language of the notice prior to requesting Court intervention. If the parties are unable to agree on a proposed notice, Blake shall file a motion for approval of his proposed notice no later than five days after the deadline for the joint proposed notice, and Defendants shall file a response to Blake's proposed notice within five days of service.

4) Within 30 days of this Order, Defendants shall deliver to Blake's counsel a list in an electronic or computer-readable format the full name, address(es), and telephone number(s) for each of the potential class members.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of June, 2016.