# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00441-SCT

*JAMES K. WARRINGTON, INDIVIDUALLY AND AS PARENT AND LEGAL-NATURAL GUARDIAN OF HIS MINOR CHILD J.P.W., KINGSLEY ELISE WARRINGTON AND WESLEY ANN WARRINGTON*

*v.*

*WATKINS & EAGER, PLLC, JACKS GRIFFITH LUCIANO, P.A., AND HUNT ROSS & ALLEN, A PROFESSIONAL ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2022 |
| TRIAL JUDGE: | HON. ROBERT Q. WHITWELL |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LOUIS H. WATSON, JR. |
| | ROBERT N. NORRIS |
| ATTORNEYS FOR APPELLEES: | R. DAVID KAUFMAN |
| | KAYTIE MICHELLE PICKETT |
| | WALTER ALAN DAVIS |
| | LAWRENCE QUINLIVAN |
| | M. PATRICK McDOWELL |
| | JACOB A. BRADLEY |
| | ADAM STONE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 09/28/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. James K. Warrington, individually and as parent and legal natural guardian of his minor children J.P.W., Kingsley Elise Warrington, and Wesley Ann Warrington, appeals the trial court's dismissal of his second complaint for impermissible claim splitting. Because the

doctrine of claim splitting is inapplicable, we reverse the trial court's dismissal of the second complaint, and we remand this case to the trial court with instructions to reinstate the second complaint and to proceed with litigation.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 14, 2016, Austin and Angela Poole died in a plane crash. Angela was survived by her children from a previous marriage to James K. Warrington. Austin was survived by his children from a previous marriage to Leslie Miley. Warrington retained Jacks, Griffith & Luciano, P.A., to represent his interests and those of his children in a lawsuit against the Federal Aviation Administration (FAA). Miley retained Watkins & Eager to represent her and her children's interests. William G. Willard, Jr., who was appointed as the administrator of both estates, retained Hunt, Ross & Allen.

¶3.     On August 14, 2018, the two-year statute of limitations under the Federal Tort Claims Act expired. At that time, neither Willard nor the attorneys representing the family members had filed a Form 95 claims notice to the FAA. On September 15, 2019, attorneys for both Willard and Miley submitted a claims notice to the FAA, but it was denied as untimely and meritless.

¶4.     Warrington retained Watson & Norris, PLLC, to pursue a legal-malpractice claim based on the failure to timely file suit against the FAA. On April 13, 2021, Watson & Norris filed a complaint for legal malpractice against Watkins & Eager (Complaint I). After filing Complaint I, Watson & Norris determined that it should have also filed claims against Jacks,

Griffith & Luciano; Hunt, Ross & Allen; and Willard. Based on conversations with the proposed Defendants, it became apparent that Jacks, Griffith & Luciano would oppose a motion to amend Complaint I. Because of the known opposition from Jacks, Griffith & Luciano and the various delays in court proceedings caused by COVID-19 restrictions, Watson & Norris was concerned that the statute of limitations on the legal-malpractice claim would expire on August 14, 2021, before it could obtain leave to amend Complaint I. As a result, Watson & Norris decided to dismiss Complaint I and to file a new complaint that named all of the desired Defendants (Complaint II). On July 23, 2021, Watson & Norris filed Complaint II in Hinds County Circuit Court against Watkins & Eager; Jacks, Griffith & Luciano; Hunt, Ross & Allen; and Willard. Twelve days later, Watson & Norris dismissed Complaint I.

¶5. On September 15, 2021, Warrington filed his first amended complaint in Hinds County Circuit Court. Hunt, Ross & Allen filed its answer and affirmative defenses to Warrington's first amended complaint, and it moved to transfer venue to the Lafayette County Chancery Court. On October 11, 2021, Watkins & Eager moved to dismiss Complaint II for impermissible claim splitting or, in the alternative, to transfer the action to Lafayette County Chancery Court. Jacks, Griffith & Luciano later filed a motion to dismiss for lack of jurisdiction and failure to state a claim. After these various motions were made, Complaint II was transferred to the Lafayette County Chancery Court on November 3, 2021. Once transferred, Jacks, Griffith & Luciano and Hunt, Ross & Allen joined Watkins &

Eager's motion to dismiss for impermissible claim splitting.

¶6.    After a hearing, the Lafayette County Chancery Court granted the motion and dismissed Complaint II for impermissible claim splitting. The trial court did not specify whether the dismissal was with or without prejudice.

¶7.    Hunt, Ross & Allen emailed a proposed order to all parties noting the case was "dismissed as to all parties." Watkins & Eager responded with a proposed order stating that the matter was "dismissed with prejudice." Warrington objected to the proposed order.

¶8.    Watkins & Eager emailed the proposed order to the trial court and noted Warrington's objection but stated, "a dismissal with prejudice is . . . what we requested in the motion you granted." Warrington responded that the case should be dismissed without prejudice. On April 4, 2022, the trial court dismissed Complaint II with prejudice. Warrington timely appealed the dismissal of Complaint II.

¶9.    On appeal, Warrington argues: (1) Complaint II should not have been dismissed because of claim splitting, and (2) if this Court affirms the trial court's dismissal, we should find the trial court abused its discretion by dismissing Complaint II with prejudice.

## STANDARD OF REVIEW

¶10.   A trial court's grant of a motion to dismiss is typically reviewed de novo. *Carpenter v. Kenneth Thompson Builder, Inc.*, 186 So. 3d 820, 823 (Miss. 2014) (citing *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1275 (Miss. 2006)). Whether the claim-splitting doctrine applies to a case is also reviewed de novo. *Id.* at 823-24. If the doctrine applies, then the

trial court's decision to dismiss based on claim splitting is reviewed for an abuse of discretion. *Id.*

## DISCUSSION

¶11.    "Mississippi is among the majority of states which does not allow splitting a cause of action." *Alexander v. Elzie*, 621 So. 2d 909, 910 (Miss. 1992) (citing *Kimball v. Louisville & Nashville R.R. Co.*, 94 Miss. 396, 48 So. 230 (Miss. 1909)). "Claim-splitting has long been prohibited under Mississippi law and occurs when a plaintiff attempts to bring a duplicative action involving claims arising from a single body of operative facts against the same defendants." *Carpenter*, 186 So. 3d at 824. The claim-splitting doctrine requires that all four identities of res judicata[1] be present: "(1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Id.* at 827 (citing *Hill v. Carroll Cnty.*, 17 So. 3d 1081, 1085 (Miss. 2009)).

¶12.    The prohibition of claim splitting dates back to 1909 in *Kimball*. Kimball was injured by a train while attempting to cross a railway track with his horse and wagon. *Kimball*, 48 So. at 230. He initially brought suit and recovered a judgment against the railroad company for damages to his horse and wagon. *Id.* After that judgment was fully satisfied, Kimball brought suit to recover damages for personal injuries he sustained in the same collision. *Id.*

---

[1] Res judicata requires a final judgment; claim splitting does not. *Id.*

5

The trial court "gave a peremptory instruction to find for the [railroad company]," and Kimball appealed. *Id.* at 230-31.

¶13.    On appeal, the Court affirmed and held that when a person receives injuries to both person and property by the same tortious act, only a single cause of action arises. *Id.* at 231. The Court stated, "[t]here is nothing to be gained in splitting up the rights of an injured party as in this case, and much may be saved if one action is made to cover the subject." *Id.* Interestingly, none of the cases that rely on the doctrine of claim splitting refer to or discuss the Mississippi Rules of Civil Procedure. This Court has given little consideration or analysis about how the adoption of the Mississippi Rules of Civil procedure affect the 1909 *Kimball* decision.

¶14.    In *Carpenter*, this Court emphasized that "a plaintiff may not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Carpenter*, 186 So. 3d at 824 (internal quotation mark omitted) (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002)). In *Carpenter*, Carpenter filed a negligence suit against the Mississippi Department of Transportation and five John Does (*Carpenter I*). *Id.* at 822. More than a year later, Carpenter moved to amend her complaint to add Mallette Brothers Construction, Inc., and J.L. McCool Contractors. *Id.* The motion was granted, and the first amended complaint was filed within the statute of limitations. *Id.*

¶15.    Carpenter filed a second motion for leave to amend her complaint to add Kenneth

Thompson Builders, Coastal Masonry, Pro Mow Lawn Care, and Capital Security as defendants. *Id.* at 823. The parties were unable to agree on a hearing date before the expiration of the statute of limitations. *Id.* As a result, the second amended complaint was filed after the expiration of the statute of limitations. *Id.*

¶16. In light of the statute of limitations deadline and the fact that the motion to amend would not likely be granted before the statute of limitations expired, Carpenter filed a second complaint in the same court naming Kenneth Thompson Builders, Coastal Masonry, Pro Mow Lawn Care, and Capital Security as defendants (*Carpenter II*). *Id.* Carpenter then moved to consolidate *Carpenter I* and *Carpenter II*. *Id.* Defendants filed a motion to dismiss both cases.

¶17. The trial court dismissed *Carpenter I* for the reason that the second amended complaint had been filed after the expiration of the statute of limitations. *Id. Carpenter II* also was dismissed on the ground of impermissible claim splitting. *Id.*

¶18. On appeal, the Court of Appeals "reversed both dismissals, rejecting the claim-splitting argument and finding that the two cases should be considered consolidated for purposes of remand." *Id.* This Court granted certiorari, reversed the judgment of the Court of Appeals, and affirmed the trial court's dismissals. *Id.* at 822.

¶19. The Court explained:

> [T]he timeline clearly demonstrates that the motion to add the defendants as formal parties to *Carpenter I* was approved while *Carpenter II* was pending. The defendants were formal parties to both litigations simultaneously until the motion to dismiss *Carpenter I* was granted. Carpenter *was* "maintain[ing] two

7

actions on the same subject in the same court, against the same defendant at the same time." *See* Sep. Op. ¶ 22 (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2nd Cir. 2000)). . . .

. . . [T]he arrival of the final judgment to one of two pending duplicative actions does not eliminate the relevance of a claim-splitting analysis; the question simply becomes, not whether a final judgment *will* preclude the duplicative litigation, but whether the final judgment that has now arrived *currently* precludes the duplicative litigation. Both a judgment on the substantive merits of the case and a dismissal of parties *with prejudice* due to procedural bars are final judgments that will preclude the parties from further litigation on the same set of facts. The rules governing timely addition of defendants would be meaningless if that procedural bar could be sidestepped by simply filing a second action in anticipation of an adverse ruling. Carpenter filed the second action in anticipation of, and in an attempt to sidestep, a final judgment that would preclude the defendants from litigation on this nucleus of facts. This is exactly the type of scenario the claim-splitting doctrine is designed to protect against.

*Id.* at 826 (second alteration in original) (footnote omitted).

¶20. The Court noted that there were no special circumstances present to justify an exception to the procedural bar, stating:

The second motion to amend was filed almost a year after Carpenter became aware of the existence of the new defendants; multiple timely court dates were available for the parties to work with; Carpenter's own attorney had limited availability, and no bad faith is evident from any of the parties regarding the scheduling. We find that the trial court correctly characterized *Carpenter II* as a violation of the doctrine against claim-splitting, and the Court of Appeals erred in construing Carpenter's procedural maneuvers as a permissible tactic for avoiding the impending statute-of-limitations bar on the second amended complaint in *Carpenter I*.

*Id.* at 827.

¶21. In *Triplett v. Southern Hens, Inc.*, Triplett filed suit against Southern Hens but failed to timely serve Southern Hens within the mandatory 120-day period prescribed by

8

Mississippi Rule of Civil Procedure 4(h) (***Triplett II***). ***Triplett v. S. Hens, Inc.***, 238 So. 3d 1128, 1130 (Miss. 2018). Triplett did not dismiss the complaint. ***Id.*** Instead, while ***Triplett II*** was still pending, Triplett filed another lawsuit against Southern Hens in the same court (***Triplett III***). ***Id.*** The trial court dismissed ***Triplett II*** for Triplett's failure to serve Southern Hens. ***Id.*** The trial court also dismissed ***Triplett III*** because "Triplett had violated Mississippi's rule prohibiting duplicative litigation (claim-splitting)." ***Id.***

¶22. On appeal, this Court explained,

> Under Mississippi law, plaintiffs are prohibited from bringing duplicative actions. *See **Carpenter v. Kenneth Thompson Builder Inc.***, 186 So. 3d 820, 824-827 (Miss. 2014). This rule finds its roots in the policy rationale of judicial economy: it works to prevent the waste of scarce judicial resources and to foster "the efficient and comprehensive disposition of cases." ***Id.*** at 824 (citing ***Katz v. Gerardi***, 655 F.3d 1212, 1217 (10th Cir. 2011)). Indeed, we have held "[p]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." ***Id.*** (quoting ***Curtis v. Citibank***, 226 F.3d 133, 139 (2d Cir. 2000)). And "[u]nlike the doctrine of res judicata, a final judgment is not required in order to apply a claim-splitting analysis; rather, the test is 'whether the first suit, assuming it were final, would preclude the second suit.'" ***Id.*** at 825 (quoting ***Katz***, 655 F.3d at 1218-19).

***Triplett***, 238 So. 3d at 1130-31 (alterations in original). The Court concluded:

> In sum, we find that Triplett—by filing ***Triplett III*** while ***Triplett II*** was still pending—violated the prohibition against duplicative actions. Indeed, ***Triplett III*** was filed against the same defendant as in ***Triplett II*** (Southern Hens), in the same court as ***Triplett II*** (Jones County Circuit Court), and ***Triplett III*** sought the same relief sought in ***Triplett II*** (bad-faith failure to report). And so this Court must ask "whether the first suit, assuming it were final, would preclude the second suit." *See **Carpenter***, 186 So. 3d at 825 (quoting ***Katz***, 655 F.3d at 1218-19). And to that end, we find that it would. For these reasons, we affirm the circuit court's dismissal of ***Triplett III*** as an impermissible duplicative action.

*Triplett*, 238 So. 3d at 1133-34.

¶23.    The Court noted, "[t]hat Triplett may find herself outside of the statute of limitations due to *Triplett III* being declared null is of no consequence" since "that result will be entirely a consequence of the plaintiff's own failure to follow the rules."  *Id.* at 1133 (internal quotation mark omitted) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993)).  The Court further noted that Triplett "could have used legitimate means to preserve her claim—such as voluntarily dismissing *Triplett II*.  But Triplett did not do this; she instead chose to file a duplicative claim in the same court, regarding the same matter, against the same defendant."  *Id.* at 1133.

¶24.    The case before us is different from *Kimball*, *Carpenter*, and *Triplett*.  Here, unlike in *Kimball*, Warrington did not receive a judgment against Watkins & Eager and then after that judgment was satisfied, file another lawsuit against Watkins & Eager along with other Defendants based on the same accident.  *See Kimball*, 48 So. at 230.  And unlike *Carpenter* and *Triplett*, Warrington did not "*maintain* two actions on the same subject in the same court, against the same defendant at the same time."  *Carpenter*, 186 So. 3d at 824 (emphasis added) (internal quotation mark omitted) (quoting *Curtis*, 226 F.3d at 139); *Triplett*, 238 So. 3d at 1131 (emphasis added) (internal quotation mark omitted) (quoting *Carpenter*, 186 So. 3d at 824).  Instead, Warrington voluntarily dismissed the first action against Watkins & Eager and filed a second action against all Defendants.  The three additional Defendants in the second action were never parties to the first action.

10

¶25.   Complaint I was *voluntarily* dismissed on August 4, 2021, just *twelve days* after Complaint II was filed.  Warrington explained that he intended to dismiss Complaint I before Complaint II was filed but that due to a clerical error, Complaint I was not dismissed.  As soon as he realized Complaint I had not been dismissed, Warrington dismissed Complaint I.  Warrington's dismissal of Complaint I within twelve days of filing Complaint II can hardly be characterized as "*maintain*[*ing*] two actions," as contemplated under the claim-splitting doctrine.  *Carpenter*, 186 So. 3d at 824 (emphasis added) (quoting *Curtis*, 226 F.3d at 139); *Triplett*, 238 So. 3d at 1131 (emphasis added) (quoting *Carpenter*, 186 So. 3d at 824).

¶26.   Additionally, Warrington voluntarily dismissed Complaint I without any prompting by Defendants or the trial court.  Watkins & Eager filed its motion to dismiss Complaint II for impermissible claim splitting on October 11, 2021, more than two months *after* Complaint I had been dismissed.  The trial court dismissed Complaint II for impermissible claim splitting on April 4, 2022, eight months *after* Complaint I had been dismissed.  Thus, unlike in *Carpenter* and *Triplett*, at the time Watkins & Eager moved to dismiss and the motion was granted, Warrington was not maintaining two actions against the same Defendants.  *Carpenter*, 186 So. 3d at 822-23 (plaintiff maintained two actions for eleven months); *Triplett*, 238 So. 3d at 1130 (plaintiff maintained two actions for five months).  Instead, Warrington had only one action against all Defendants.

¶27.   Moreover, unlike *Carpenter* and *Triplett*, Warrington did not file the second action

11

to sidestep a procedural bar, *Carpenter*, 186 So. 3d at 826 (statute of limitations), or to preserve a claim after he failed to follow court rules, *Triplett*, 238 So. 3d at 1133 (Mississippi Rule of Civil Procedure 4(h) service of process). Instead, because of motion-hearing constraints related to the coronavirus, Warrington chose to dismiss the first complaint against Watkins & Eager in lieu of filing a motion to amend and to file a second complaint against all Defendants. Notably, both complaints were filed well within the statute of limitations.

¶28. The rationale behind claim splitting

> is based on the idea that where a person has a single cause of action, in the interests of convenience and economy to the public and to the defendant he should be entitled to but one right of action and hence should be required to unite in one proceeding all matters which are part of it.

*Wilner v. White*, 929 So. 2d 315, 321 (Miss. 2006) (quoting *Alexander*, 621 So. 2d at 910). "[D]ismissals on the basis of the claim-splitting doctrine are made for the purpose of eliminating duplicative litigation and for docket control." *Carpenter*, 186 So. 3d at 824. "By spreading claims around . . . , parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Id.* (internal quotation mark omitted) (quoting *Katz*, 655 F.3d at 1217). The record reflects that Warrington did not waste "scarce judicial resources" or "undermine 'the efficient and comprehensive disposition of cases.'" *Id.* (internal quotation marks omitted) (quoting *Katz*, 655 F.3d at 1217). Complaint I was pending less than four months before it was dismissed, and Complaint I was dismissed twelve days after Complaint II was filed. As a result, few, if any, judicial resources were expended. And Warrington's second action did not duplicate the first action. *Id.* Instead,

12

Complaint II replaced Complaint I. Indeed, Warrington "unite[d] in one proceeding all matters" regarding his cause of action against the Defendants. *Wilner*, 929 So. 2d at 321 (quoting *Alexander*, 621 So. 2d at 910).

¶29. Here, unlike in *Carpenter*, special circumstances are present to justify an exception to the procedural bar of claim splitting. *Id.* at 827. And unlike in *Triplett*, Warrington "used legitimate means to preserve h[is] claim—such as voluntarily dismissing [Complaint I]." *Triplett*, 238 So. 3d at 1133. Because the theory behind claim splitting is not present here, the trial court erred by dismissing Complaint II.

¶30. The doctrine of claim splitting is inapplicable in this case. We reverse the trial court's dismissal of Complaint II, and we remand this case to the trial court with instructions to reinstate Complaint II and to proceed with litigation.[2]

¶31. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**

---

[2] Because we find Complaint II should not have been dismissed, we decline to address the remaining issue.