NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0050n.06

No. 18-1588

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MAHER WAAD; MARKS ONE CAR RENTAL, INCORPORATED; MARKS ONE COLLISION,

    Plaintiffs-Appellants,

v.

FARMERS INSURANCE EXCHANGE, a California Corporation; ALLEN KELLER; THOMAS BERRY,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 30, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE:    COLE, Chief Judge, SUHRHEINRICH and MOORE, Circuit Judges.

**SUHRHEINRICH, Circuit Judge.** This appeal stems from the third of three cases filed by Maher Waad, Marks One Car Rental, Inc., and Marks One Collision (collectively, "Plaintiffs") against Farmers Insurance Exchange ("Farmers") after Farmers accused Plaintiffs of insurance fraud. The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs improperly split their claims among the three lawsuits and engaged in duplicative litigation. We **AFFIRM**.

## I.

Waad owns Marks One Car Rental and Marks One Collision. Marks One Collision is an automobile collision repair business that specializes in repairing cars covered by insurance, including Farmers. After repairing a damaged vehicle, Plaintiffs would submit the repair bill directly to Farmers. Farmers employees Allen Keller and Scott Wood investigated Plaintiffs'

businesses for insurance fraud in late 2013. After reviewing Plaintiffs' records and interviewing Plaintiffs' customers, Keller and Wood produced a report concluding that Plaintiffs were indeed engaging in insurance fraud by submitting receipts for repair work not actually performed. Farmers sent the report to Macomb County, Michigan law enforcement, which it was authorized to do under MICH. COMP. LAWS § 500.4507. Macomb County law enforcement then conducted its own investigation, raided Plaintiffs' businesses on April 23, 2014, and arrested Waad four days later. Waad was bound over for trial by the Macomb County district court, but the information against him was eventually quashed by Macomb County circuit court for lack of probable cause.

According to Plaintiffs, the investigation and report were merely an excuse to harm Waad—an Arab-American—and his businesses because of racial animus. Plaintiffs reacted to the Farmers investigation and Farmers' coordination with Macomb County law enforcement by filing lawsuits in 2013, 2016, and 2017.

### A.

In the first iteration—the "2013 Case"—Plaintiffs sued Farmers and six other insurance companies for tortious interference, defamation, violation of Michigan's consumer protection act, civil conspiracy, and racial discrimination under 42 U.S.C. § 1981. Plaintiffs alleged that, during Farmers' investigation, Farmers' employees made direct contact with Plaintiffs' customers and made defamatory comments accusing Plaintiffs of criminal activity in a concerted effort to harm Plaintiffs' businesses.

On January 8, 2014, Plaintiffs first amended their 2013 complaint for reasons not relevant here. On April 23, 2014, Macomb County law enforcement raided Plaintiffs' businesses. Waad was arrested four days later. On May 28, 2014, Plaintiffs filed a second amended complaint,

adding factual allegations that Farmers and its employees, including Tom Berry, were cooperating with Macomb County law enforcement:

> Despite the Corporate level acknowledgement and clear notice . . . of the racially motivated conduct of its employees . . . Defendant Farmers Insurance continues to employ . . . Tom Berry, who continue[s] to engage in overt acts of vengeful and racially motivated intimidation and tortious interference with Plaintiff Marks One Car Rental and Marks One Collision. The efforts of . . . Berry have included such retaliatory acts as contacting the Plaintiff's customer base and directly communicating with representatives of the Macomb County Auto Theft Task Force (MCATS) as a means of attempting to deflect and cover up their racist and tortious conduct.
>
> ***
>
> Immediately following the filing of this suit, . . . Special Investigative Unit agent Tom Berry [] directly solicited members of law enforcement, including Detective John Willis of the Macomb County Auto Theft Task Force (MCATS), to threaten, intimidate and harass the Plaintiff's customer base as a direct means of obstructing this Federal Court action and tampering with potential witnesses.

Curiously, however, Plaintiffs' second amended complaint did not include any claims regarding the raid or Waad's arrest.

The district court barred the filing of any further changes to the second amended complaint. Following months of motion practice, three things happened. One, the district court eventually dismissed the claims against the other insurance companies. Two, Plaintiffs' counsel, Steven Haney, withdrew after the insurance companies filed numerous motions to disqualify him because he formerly served as legal counsel to Farmers. Three, the district court granted Farmers' summary judgment motion, holding that Plaintiffs failed to establish any damages to their business or harm to their reputation due to Farmers' actions. Plaintiffs appealed the grant of summary judgment on

the defamation issue, and that appeal is also before this panel. *See Marks One Car Rental, Inc. et al. v. Auto Club Ins. Co., et al.*, Case No. 18-1386.

**B.**

On December 5, 2014, while the 2013 Case was still pending, Waad was bound over for trial by a Michigan district court. On March 9, 2015, a Michigan circuit court quashed the information, holding that there was a lack of probable cause to prosecute Waad. The Michigan Court of Appeals affirmed the circuit court's ruling. *See People v. Waad*, No. 326568, 2016 WL 3088182 (Mich. Ct. App. May 31, 2016). This led to the second iteration—the "2016 Case"— where Plaintiffs sued Farmers again under 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution, and other assorted state law charges based on the April 23, 2014 raid on Plaintiffs' businesses and Waad's arrest. This time, Plaintiffs added as defendants Farmers' employee Allen Keller and various Macomb County law enforcement officials. Relevant here are allegations that Farmers and its employees were acting in concert with Macomb County law enforcement:

> [O]n or about the date of September 12th, 2013, the [Macomb Auto Theft Squad] . . . was contacted by Defendant Keller of Farmers Insurance, who requested a meeting to discuss a potential fraud complaint on behalf of Farmers Insurance. The purpose of this meeting was for Defendant Farmers to propose criminal charges be brought against Plaintiff Waad based upon a contentious history with claims adjusters and the belief Plaintiff Waad had been paid too much money by Defendant Farmers Insurance.
>
> ***
>
> At this same September 12th, 2013 meeting, representatives of Defendant Farmers Insurance advised [law officers], as well as the Macomb County Prosecutor's Office, they suspected Plaintiff Waad of charging inflated and fictitious tow bills, extending the length of repairs to increase the charges for rental cars provided by

> Marks One Collision Shop and enhancing claims on vehicles that were being repaired at Plaintiff Waad's collision shop.
>
> **\*\*\***
>
> At the conclusion of this initial September 12th, 2013 meeting, Defendants Farmers and Keller stated that they were going to conduct physical damage inspections on several of the vehicles that had been repaired by Marks One Collision . . . . Then, based on their findings, they would submit their investigative findings to the M.A.T.S. unit, as well as the Macomb County Prosecutor's Office, for anticipated criminal prosecution. **Undeniably, by all factual accounts, Defendant Farmers Insurance was the party which initiated the failed criminal prosecution of Plaintiff Maher Waad.**

The district court dismissed Farmers and Keller *sua sponte* under Rule 12(b)(6) because Plaintiffs did not allege that Farmers and Keller were state actors or that they acted in concert with state actors, so Plaintiffs "[did] not plead plausible claims against [them] under § 1983." The district court did not reference the 2013 Case in its order.

**C.**

Seven-and-a-half months after Farmers and Keller were dismissed from the 2016 Case, Plaintiffs filed a third lawsuit, the "2017 Case." In this action, Plaintiffs again brought claims tracing back to the raid and Waad's arrest. This time, Plaintiffs corrected their earlier failure and alleged that Farmers, Keller, and Berry, acting in concert with Macomb County law enforcement, violated the Fourth and Fourteenth Amendments by committing false arrest, false imprisonment, and unreasonable search and seizure; malicious prosecution under the Constitution and state law; civil conspiracy; and statutory and common-law conversion. The 2017 complaint differed from the 2016 complaint in two main respects: (1) the addition of Berry as a defendant and (2) allegations that Farmers, Keller, and Berry acted in concert with Macomb County law enforcement.

Farmers, Keller, and Berry moved to dismiss the 2017 Case under Rule 12(b)(6) for improper claim splitting, duplicative litigation, and res judicata. The district court granted the motion on claim-splitting and duplicative-litigation grounds and dismissed the 2017 Case in its entirety. Specifically, the district court held that the allegations in the 2013, 2016, and 2017 Cases were all based upon the same set of allegations: that Farmers investigated Waad and Marks One Collision in 2013 because of "ill-will and improper motives," and that the investigation was "improperly conducted, flawed and inaccurate." The district court found claim-splitting for the following reasons:

> It is fair to say that [P]laintiffs have been engaging in claim-splitting since 2016. First, [P]laintiffs chose to file the 2016 Case as a new case, instead of seeking leave to file the 2016 Case as a supplemental pleading in the 2013 Case. Plaintiffs also filed the 2016 Case with Steven Haney as counsel. As Farmers' points out, [P]laintiffs likely filed the 2016 Case to avoid the formal disqualification of Haney as their counsel in that case due to his conflict of interest with Farmers which was the subject of motion practice in the 2013 Case and the 2016 Case.

> Second, after the Court dismissed Farmers and Keller from the 2016 Case, [P]laintiffs could have moved for reconsideration or to amend their complaint to include the allegations of "state action" now contained in the 2017 Case. However, as Farmers notes, if plaintiffs had done so, such an amendment would again subject Haney to disqualification.

> Overall, the 2017 Case is an improper attempt at claim-splitting.

The district court also held that the 2016 and 2017 Cases were duplicative litigation, and that Plaintiffs should have sought reconsideration or leave to amend their 2016 complaint instead of waiting more than a year to file the 2017 Case. The district court did not rule on the res judicata

arguments because it found the claim splitting and duplicative litigation rationale "more appropriate."

Plaintiffs appeal the dismissal of the 2017 Case. We have jurisdiction over this appeal from final judgment. 28 U.S.C. § 1291.

## II.

We ordinarily review de novo a dismissal under Rule 12(b)(6) for failure to state a claim. *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 986–87 (6th Cir. 2018). But where the district court dismisses a subsequent suit as duplicative, our review is for an abuse of discretion because the district court's decision is grounded on its inherent discretionary authority to manage its own docket. *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997); *see also Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (applying the same abuse-of-discretion standard of review for dismissals based on claim-splitting); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Notwithstanding, dismissing a suit that is not truly duplicative of a prior one is an abuse of discretion. *Smith*, 129 F.3d at 361.

Claim-splitting and duplicative litigation are variations of res judicata. Res judicata—more specifically here, claim preclusion—bars subsequent litigation of causes of action where a court has already issued a final decision on the merits in an earlier case and the causes of action were, or should have been, litigated in the earlier case between the same parties. *In re Alfes*, 709 F.3d 631, 638 (6th Cir. 2013) (citation omitted). "[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Katz*, 655 F.3d at 1218. Essentially, claim splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment. *See id.* ("The proper question is whether, assuming the first suit was already final, the second suit would be precluded under res

judicata analysis.") (citing *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002)).  In a similar vein, the doctrine of duplicative litigation allows "a district court [to] stay or dismiss a suit that is duplicative of another federal court suit" using "its general power to administer its docket."  *Curtis*, 226 F.3d at 138 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also Smith*, 129 F.3d at 361 (explaining that a district court may also "enjoin the parties from proceeding in the other suit").  The difference between claim splitting and duplicative litigation is in name only.  Both stem from the Supreme Court's instruction in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) that "[a]s between federal district courts . . . the general principle is to avoid duplicative litigation."  *See Katz*, 655 F.3d at 1217 (claim-splitting); *Curtis* 226 F.3d at 138 (duplicative litigation).  Indeed, the Tenth Circuit has used the terms "claim splitting" and "duplicative litigation" interchangeably.  *See Katz*, 655 F.3d at 1218 (citing *Curtis*, 226 F.3d at 138).

These doctrines all come with a caveat: they "do[] not apply to claims that were not ripe at the time of the first suit."  *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) (citation omitted); *see also Smith*, 129 F.3d at 361 (explaining that suits are not truly duplicative when they do not have an identity between the causes of action).[1]

### III.

Plaintiffs argue that the district court was wrong for three reasons: (1) the facts underlying the respective cases are different; (2) the claims in the 2016 and 2017 Cases were not ripe until after the 2013 Case was filed, so no claim-splitting occurred; and (3) they made no attempt to gain

---

[1] "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)).

a procedural advantage by splitting the lawsuits to avoid procedural rulings requiring Haney's withdrawal from the 2013 Case.[2]

**A.**

Plaintiffs' first two arguments are one and the same: because the cases are premised on different facts, no claim-splitting occurred. We agree that at least one relevant fact is different. The criminal information against Waad was not dismissed until March 9, 2015. Thus, Plaintiffs' malicious prosecution claim was not ripe until that date. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding that a criminal defendant's claim for malicious prosecution does not accrue until he or she receives a favorable termination of the criminal proceeding). That means Plaintiffs could not have stated a claim of malicious prosecution until March 9, 2015 at the earliest (the date when the criminal information was dismissed), which was nearly ten months after the district court barred further amendments to the complaint in the 2013 Case.

It is true that Plaintiffs could have petitioned the district court for leave to file a third amended complaint. *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").[3] However, Plaintiffs were not required to amend their 2013 complaint because "an action need include only the portions of the claim due at the time of commencing that action," so "the opportunity to file a supplemental complaint is not an obligation." *Rawe*, 462 F.3d at 530 (citation omitted) (reversing district court's dismissal on res judicata grounds where facts underlying second lawsuit did not happen until after plaintiff had already filed her first lawsuit). Thus, the district court erred by

---

[2] Haney served as counsel and filed the 2013, 2016, and 2017 Cases. Although he withdrew from the 2013 and 2017 Cases, Haney remained Plaintiffs' counsel in the 2016 Case after Farmers was dismissed *sua sponte*.

[3] Farmers suggested it would have stipulated to such a request, but later withdrew that stipulation.]

characterizing the 2016 Case as improperly split from and duplicative of the 2013 Case.[4] Plaintiffs were within their rights to file the 2016 lawsuit instead. Relatedly, the district court's grant of summary judgment to Farmers in the 2013 Case was not res judicata to the 2016 and 2017 Cases because they did not share an identity of the causes of action.

On the other hand, the district court correctly held that the 2016 and 2017 Cases were improperly split and duplicative. Duplicative litigation allows district courts to dismiss later-filed cases because of the preclusive effects that the earlier cases would have on the litigation. *See Curtis*, 226 F.3d at 138 (explaining that dismissal or a stay of the second case is proper "[b]ecause of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending" (citations omitted)). In fact, the 2016 Case has proceeded against the Macomb County law enforcement officials, and on December 11, 2018, the district court granted summary judgment to the Macomb County defendants on the malicious prosecution claims against them. Had the district court allowed the 2017 Case to proceed instead of dismissing it, the 2016 Case summary judgment would have been res judicata to the 2017 Case. To prove malicious prosecution, Plaintiffs would have had to demonstrate, among other things, that Farmers, Keller, and Berry "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). In their 2017 complaint, Plaintiffs alleged that the search warrants for Plaintiffs' businesses and the arrest warrant for Waad were based on the "Defendant Farmers Insurance Allen Keller investigative report as well as the willfully fabricated investigative findings of Detective David Kriss." But in the 2016 Case summary judgment opinion with respect to the malicious prosecution

---

[4] At that point, the district court could have consolidated the 2013 and 2016 Cases together because everything traced back to Farmers' original investigation. *See* Fed. R. Civ. P. 42(a)(2).

claims against Kriss, the district court held that Macomb County conducted its own investigation
and that Waad committed the alleged insurance fraud:

> The claim . . . is that MATS [Macomb County law enforcement] officers failed to
> sufficiently corroborate the investigative findings from Farmers before they
> investigated Marks One.  First, this assertion is belied by the record which indicates
> MATS did its own investigation after receiving the [Farmers] report. . . . The record
> also shows that Waad . . . testified to the "free rentals" and "waived deductibles"
> he offered customers who would agree to "deviations" after both Marks One and
> the customer had signed-off on the repair specifications and accepted payment from
> the insurance company.

The court summarized that "Plaintiffs have not produced any evidence to create a genuine issue of
material fact as to whether Kriss knowingly or recklessly presented false information to the
prosecutor or the court" when the officer relied on the Farmers' report.  In short, Plaintiffs would
be stuck with the conclusions that Macomb County conducted its own investigation after receiving
Farmers' report.  And a party does not "participate" in the decision to prosecute simply by passing
along a report to the prosecutor's office.  *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th
Cir. 2002).  Based on that conclusion, even if we did remand this case, Plaintiffs could not maintain
a malicious prosecution claim because there is no evidence Farmers or its employees influenced
or participated in the decision to prosecute Plaintiffs.  This is the exact scenario a dismissal for
duplicative litigation is designed to avoid.  Therefore, the district court did not abuse its discretion
by dismissing the 2017 Case.

Plaintiffs assert that the split occurred because of the district court's *sua sponte* decision to
dismiss Farmers and Keller from the 2016 Case.  We refuse to shift the blame.  Plaintiffs failed to
plead state action between private and state actors, a basic element of any § 1983 claim.  Indeed,
Farmers and Keller listed failure to state a claim as one of their affirmative defenses.  Plaintiffs

could have amended their complaint by right to allege state action in response. *See* Fed. R. Civ. P. 15(a)(1)(B) (allowing a party to amend its complaint within 21 days after service of a responsive pleading). They did not. Instead, the district court dismissed Farmers and Keller. And despite the unusual procedural move by the district court, nothing prevented Plaintiffs from petitioning for leave to amend their complaint after the dismissal, *see* Fed. R. Civ. P. 15(a)(2) (explaining that the district court "should freely give leave when justice so requires"), or seeking reconsideration of the dismissal itself, *see* Fed. R. Civ. P. 60(b). They did neither. Instead, Plaintiffs filed the 2017 Case. As we have explained, the discretion court did not abuse its discretion by dismissing the 2017 Case.

**B.**

Because we have concluded Plaintiffs' claims in the 2017 Case were duplicative of and improperly split from the 2016 Case, we need not consider Plaintiffs' third argument regarding Steven Haney's alleged conflict of interest and withdrawal from the 2013 Case.

**IV.**

Procedural mistakes are time-consuming and costly. Many mistakes were made here. Plaintiffs could have sought leave to amend their complaint in the 2013 Case after the criminal information against Waad was dismissed. The district court could have consolidated the 2016 Case with the 2013 Case. Plaintiffs could have properly pled their § 1983 claim in the 2016 Case in the first instance or moved to amend after the district court pointed out the error. None of these prudent and practical moves occurred, however. Instead, Plaintiffs filed the 2017 Case, which was duplicative of the 2016 Case, and the district court did not abuse its discretion by dismissing it. We **AFFIRM**.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I agree that we should affirm the district court's judgment. I write separately to detail the claim-preclusive effect of Plaintiffs' 2016 case.

"The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011). "The proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis. Once we assume finality here, all of the requirements of claim preclusion are met." *Id.* at 1219 (citation omitted); *see also Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998) (analyzing whether the parties' federal case was barred under claim preclusion due to a previously filed state case and noting that "[t]he district court relied on the 'other action pending' facet of the *res judicata* doctrine" to dismiss the subsequently filed federal case); *see also* 18 Wright & Miller, Fed. Prac. & Proc. Juris § 4406 (3d ed. 2016) ("In dealing with simultaneous actions on related theories, courts at times express principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment.").

In the current case, the 2017 case would be precluded under claim-preclusion analysis if the 2016 case were finally decided. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006). As Plaintiffs themselves concede in their motion to consolidate the 2017 and 2016 cases, the claims and legal issues underlying each case are substantively identical. Additionally, after the district court concluded that Plaintiffs had not sufficiently articulated how Farmers Insurance or Keller had engaged in state action for Plaintiffs' 42 U.S.C. § 1983 claim, Farmers Insurance and Keller were dismissed sua sponte from the 2016 case for Plaintiffs' failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Thus, at the time the district court dismissed the 2017 case, any presumed final judgment in the 2016 case would include this

dismissal. Given Plaintiffs' right to appeal the dismissal following final judgment in the 2016 case, Plaintiffs would be consequently barred from bringing any claim arising out of the same transaction or occurrence against the same defendants (Farmers Insurance and Keller), as well as Farmers Insurance's privies (in the 2017 case, Berry). *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under [Rule] 12(b)(6) is a 'judgment on the merits.'"). Moreover, the fact that Plaintiffs seemingly cured the deficiencies in their 2016 case when they filed their 2017 case does not save their claim. *See Begala v. PNC Bank, Oh., Nat'l Ass'n*, 214 F.3d 776, 780 (6th Cir. 2000) ("The law does not allow [the plaintiff] the luxury of returning to federal court with the same set of facts until he succeeds in alleging a federal cause of action."); *see also Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002) ("It is well-settled that a plaintiff may not use the tactic of filing substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." (quotation marks omitted)). Because Plaintiffs' 2017 case would thus be subject to claim preclusion presuming a final judgment in the 2016 case, I agree that the 2017 case constitutes improper claim splitting and would affirm the district court's dismissal of Plaintiffs' 2017 case. For these reasons, I concur in this court's judgment.